197 So.2d 428

George C. WALLACE, Member of Alabama
Building Commission et al.

v.

BOARD OF EDUCATION OF MONT-
GOMERY COUNTY et al.

3 Div. 264.

Supreme Court of Alabama.

March 30, 1967.

Goodwyn, Smith & Bowman, Montgomery, for appellants.

Hill, Robison & Belser, Montgomery, for appellees.

M. R. Nachman, Jr., Steiner, Crum & Baker, Montgomery, amicus curiae, in support of appellees.

COLEMAN, Justice.

This case was submitted to this court on January 11, 1967. Because of the public interest in the question presented, the case has been given preferred treatment in order that a decision might be rendered in advance of the time when a decision would have been rendered if the case had been considered in the regular order. Counsel for both appellants and appellees have been diligent in filing briefs and expediting submission of the appeal.

The complainants are: the Board of Education of Montgomery County; the members of the board individually, as members of the board, and as taxpayers and interested citizens acting under Act No. 868, approved September 8, 1961, Acts of Alabama 1961, page 1361; and the Superintendent of Education of Montgomery County, individually, as superintendent, and as taxpayer and interested citizen under Act No. 868.

The respondents are: the members of the Alabama Public School and College Authority in their capacity as such members; the members of the Alabama Building Commission as such members; the Director of the Alabama Building Commission; and the architects employed by the Commission.

Complainants pray that the court will restrain respondents from letting a proposed contract to construct a school building in Montgomery. In the contract, respondents have provided that the contractor must pay to all laborers, mechanics, carpenters, masons, and other specified classes of employees of the contractor, who work on the construction of the school building, a predetermined, minimum, hourly wage according to the applicable rate as is set out in a schedule for each class of employee, respectively.

Complainants further pray that the court declare the minimum wage requirement in the proposed contract void and that the complainant Board of Education is entitled to its proper allocation of state money provided by law for construction of the school building, without the predetermined minimum hourly wage requirement.

After hearing testimony ore tenus, the court made certain findings as follows:

"That the construction of the said new high school is a public works construction job requiring competitive public bidding and the contract must be let in accordance with the provisions of Title 50, §§ 15(1)–15(19), 1940 Code of Alabama, Recompiled 1958, commonly referred to as the 'Alabama Competitive Bid Law'.

"That the minimum hourly rates or wages shown by the schedule in the 'Minimum Rates on General Building Construction' require the payment to the various craft classifications of hourly rates or wages exceeding the wage rates prevailing in the Montgomery labor market area for certain crafts and is in excess of the wage rates paid the various crafts by responsible contractors in the Montgomery, Alabama, area for the performance of like or similar work on similar construction. That the said minimum hourly rates or wages, as set out in said schedule under the 'Minimum Rates on General Building Construction' requirements of the specifications for bidding

and constructing said new high school, . . . . are in excess of and thus are not the prevailing wages or hourly rates generally paid in the Montgomery area by responsible and licensed general contractors to the crafts for like or similar work on similar construction.

"That the intrinsic quality and character of the labor performed or work done by the various crafts is not to be determined by a guaranteed minimum hourly rate or wage nor is there any essential or necessary connection between a guaranteed minimum hourly wage or rate and the intrinsic quality and character of work along; that responsible contractors in this area pay their employees in the various crafts based on the employees' skill, ability, quality of work and number of hours worked; that they pay the wages and hourly rates prevailing in the market place for this area and that the minimum hourly rates and wages as required by the specifications are in excess of said prevailing wages and hourly rates for this area.

" . . . .

"That there is no legislative authority given to the Alabama Public School & College Authority by Act No. 243, Special Session of the Legislature of Alabama, approved May 4, 1965, or to the Alabama Building Commission by Act No. 128, Regular Session of the Legislature of Alabama, approved June 16, 1945 to set minimum wages or hourly rates for crafts employed on public works; that the captions of said acts show no legislative intent which authorizes the Alabama Public School & College Authority or the Alabama Building Commission of 1945 to require a minimum wage scale on public works contracts.

" . . . .

"That the requirement of a predetermined wage or hourly rate and the job classification of crafts as a prerequisite for bidding and construction of the new senior high school on Carter Hill Road in Montgomery, Alabama, a public works project, will result in the use of tax moneys of the State of Alabama to pay a contractor to perform said work who will not be the lowest responsible bidder and would be in violation of the 'Alabama Competitive Bid Law.' "

The court permanently enjoined respondents from requiring the predetermined specification of wages in the construction of the school on Carter Hill Road and any other school construction in Montgomery. The court further ordered that. respondents forthwith distribute to the Board of Education of Montgomery County its proper allocation under Act No. 243, approved May 4, 1965, Special Session of the Legislature of Alabama, and that advertisement be forthwith made for bids for construction of the new school on Carter Hill Road in Montgomery, without the inclusion of the predetermined specification of wages in the plans for said school.

Respondents appealed. They argue that the provisions of the Competitive Bid Law, Title 50, § 15(5) et seq., Code 1940, as amended, "have no application to the present suit," and state the question for decision as follows:

" . . . . We strenuously urge . . . . that the provisions of the Competitive Bid Law have no applicability to the present suit. That statute is a procedural statute which governs the manner in which public works contracts must be awarded. It does not govern the substantive provisions which go into the contract. The Building Commission is the agency authorized by law (Title 55, Section 367(2) and Act No. 243, Section 10(*m*) [(n)] (2), Acts of Alabama, Special Session, 1965), to prepare the specifications for the construction which is the subject of this suit. The only question presented here is whether the Building Commission has abused its discretion in requiring the insertion of a predetermined wage scale as one of the specifications of the contract. . . . ."

The question for decision is the same question which the parties in Bear Brothers, Inc. v. Trammell, 279 Ala. 194, 183 So.2d 790, undertook to present in that case, which, however, was .decided on another issue.

Respondents argue that the instant suit is a suit against the state and, for that reason, cannot be maintained under authority of Wallace v. Malone, 279 Ala. 93, 182 So. 2d 360.

In *Malone,* this court held that a bill was without equity wherein complainants sought to enjoin the officers and members of the State Board of Education from cancelling a contract previously entered into by complainant as one party, and the state acting by and through the State Board of Education as the other party. This court held that the suit was a suit to redress breach of contract by the state and that the suit could not be maintained because it was a suit against the state forbidden by Section 14 of the Constitution of 1901.

■ As stated in Glass v. Prudential Ins. Co. of America, 246 Ala. 579, 586, 22 So.2d 13, and other cases, it is the nature of the suit or relief demanded which the courts consider in determining whether a suit against a state officer is in fact one against the state within the rule of immunity referred to, and it is not the character of the office of the person against whom the suit is brought.

"Injunctive action may be maintained against a state official, if the official is acting beyond the scope of his authority or acting illegally, in bad faith, or fraudulently. A state's immunity from suit does not apply when 'officers under a mistaken interpretation of the law acting in the name of the State commit acts not within their authority which are injurious to the rights of others.' Curry v. Woodstock Slag Corp., 1942, 242 Ala. 379, 6 So.2d 479, 480. Glass v. Prudential Insurance Co. of America, 246 Ala. 579, 22 So.2d 13; Horn v. Dunn Brothers, Inc.,

·262 Ala.·404, 79 So.2d 11; Finnell v. Pitts, 222 Ala. 290, 132 So. 2. In 49 Am.Jur., States, Territories, and Dependencies, pp. 308–310, the following observation is pertinent:

" 'Nor does the immunity of the state from suit relieve an officer of the state from responsibility when he acts tortiously on the rights of an individual, or in excess or violation of his authority, even though he acts or assumes to act under the authority and pursuant to the directions of the state. * * * An officer who acts illegally is not acting as an officer, but stands in the same light as any other trespasser.' " St. Clair County v. Town of Riverside, 272 Ala. 294, 296, 128 So.2d 333, 334.

· We wish to make it abundantly clear that there is not the slightest implication whatsoever that respondents are acting fraudulently or in bad faith.

■ The ultimate question is whether the bill alleges and the proof shows that the Building Commission is acting within its authority conferred by law when the Commission requires the insertion of a predetermined, minimum, wage scale as one of the specifications of the contract for construction of the school building. If the Commission, in requiring such wage scale, is acting within its lawful authority, then the court erred in granting the injunction. On the·other hand, if the act of the Commission, in requiring the wage scale specification, exceeded the lawful authority or discretion granted to the Commission, then the act of the Commission is not the act of the state and the suit is not against the state and the decree enjoining the doing of the act is not erroneous.

Respondents, as we understand their argument, make no distinction between the prohibitory and the mandatory provisions of the decree, and, because the parties have made ·no such distinction we have made none. Whether the mandatory provisions of the decree, if considered separately from

the prohibitory provisions, might be erroneous is not presented and, therefore, is not decided. Appellants seek merely a determination whether the Building Commission acted within its lawful authority in requiring the predetermined, minimum, hourly wage scale specification in the contract.

Respondents quote from Title 55, § 367 (2), Code 1940, Recompiled 1958, as follows:

"The commission shall have full power and authority for and on behalf of the state of Alabama to acquire lands by purchase, condemnation or otherwise; to plan buildings and designate the location thereof; to plan and provide for the improvement of all property now owned or hereafter acquired by the state or any institution or agency thereof; to construct, repair, equip, remodel, enlarge, renovate, furnish, refurnish, improve, and locate such buildings, structures and facilities for the use of the state of Alabama or any of its institutions or agencies as in its judgment shall be necessary for state, institutional, or agency purposes; to enter into contract to do any of the foregoing; . . . . and generally, to take such steps as may be necessary to accomplish such purposes. . . . . *The commission is authorized and empowered to make and adopt all necessary rules, regulations and plans for its own guidance and for the proper conduct of the duties imposed upon it.* . . . ."
(Emphasis supplied by respondents.)

Respondents quote also from Act No. 243, Acts of Alabama, Special Session 1965, page 331, Section 10(n) (2), at page 340, as follows:

"The preparation of all plans and specifications for any building constructed wholly or in part with any of the money realized from this issue, and all work done hereunder in regard to the construction, reconstruction, alteration, and improvement of buildings, shall be supervised by the Alabama Building Commission . . . . ."

Respondents say that this "specific grant of authority to write the specifications for construction financed by these particular funds should remove all doubt as to the Building Commission's authority to include all specifications which it considers reasonably necessary."

Respondents say also that the specification requiring a predetermined, minimum, wage scale does not violate the procedural provisions of the Competitive Bid Law, Title 50, Section 15(5), Code 1940 Recompiled 1958; Act No. 492, approved September 30, 1947, General Acts 1947, page 338, which recites in part:

"The contract shall be awarded to the lowest responsible bidder *complying with conditions of the invitation for bids* . . . . ." (Emphasis supplied by respondents.)

Respondents say that the Competitive Bid Law is merely a procedural statute which relates only to the manner in which the contract is awarded and does not govern the substantive provisions which go into the contract.

It is clear to us that there is no express grant of authority to the Building Commission to require a specification compelling a bidder to agree to pay a predetermined, minimum wage to employees of the contractor.

Act No. 686, Sections 3, 4, and 5, Acts of 1961, pages 1361 and 1362; 1940 Code Recompiled 1958, Title 50, § 15(16) (17) (18), recite as follows:

"Section 3. The attorney general or any interested citizen may maintain an action to enjoin the letting or execution of any public works contract in violation of or contrary to the provisions of the aforesaid statutes and may enjoin payment of any public funds under any such contract.

"Section 4. The provisions of this Act are mandatory and the Act shall be so construed as to require strict competi-

tive bidding on contracts for public improvements or public works. The courts shall not invoke or apply any principle of quantum meruit or estoppel or any other legal or equitable principle which would allow recovery for work and labor done or materials furnished under any contract let in violation of competitive bidding requirements as prescribed by law.

"Section 5. All persons or parties entering into contracts or agreements with any agency or instrumentality of the State of Alabama for the construction of a public improvement shall be conclusively presumed to have notice of the provisions of this Act."

■ The quoted provisions of Act No. 868 appear to us to give the Competitive Bid Law application to the substance of the instant contract as well as to procedure in letting contracts.

We come to the question whether a specification requiring a contractor to agree to pay to employees on the work a predetermined, minimum, hourly wage is a specification which the Building Commission is authorized to insert in contracts which must be let to the "lowest responsible bidder" as required by the Competitive Bid Law, Title 50, § 15(5), Code 1940 Recompiled 1958, quoted above.

Respondents cite an opinion which appears in Quarterly Report of the Attorney General of Alabama, Vol. 54, page 27. The headnote of the opinion recites:

"The governing body of Mobile County may fix a minimum wage scale for work done in connection with proposed road construction jobs, and require adherence to such fixed scale as a condition precedent to awarding of contracts for such jobs."

The opinion holds that the county governing body, in fixing a scale of minimum wages for work on a road construction job and requiring a contractor to adhere to the wage scale as a condition of the contract, would be acting within its discretion and would not be acting in violation of a statute which required that such contracts be let to the "lowest responsible bidder." The opinion reasons that the governing body had discretion to require conditions which, in their opinion, "will tend to insure that good roads will be built in expeditious fashion"; that the county governing body might reasonably conclude that labor strife would delay construction in the absence of minimum wage provisions; and that the governing body might feel that better workers would be employed by companies paying a minimum wage.

■ Whether a contract should contain a requirement that the successful bidder must pay a predetermined, minimum, wage is a matter of discretion properly entrusted to a legislative body which has the lawful authority to exercise a legislative discretion, but we do think such a discretion has been delegated to the Building Commission which is a branch of the executive department of state government. See Sections 43 and 44, Constitution of 1901.

■ The general proposition is everywhere recognized that the Legislature cannot delegate its legislative powers, save as authorized by the Constitution itself. The power to delegate to counties and cities certain legislative powers relating to local governments is a part of the full legislative powers conferred on the Legislature. In re Opinions of the Justices, 232 Ala. 56, 58, 166 So. 706.

The legislature has given to the Building Commission power, on behalf of the state, to plan buildings and to construct, repair, equip, remodel, enlarge, renovate, furnish, improve, and locate such buildings for the use of the state or any of its agencies, and to appoint and dismiss officers and employees, including architectural and technical employees, as may be necessary to effectuate the purposes of the statute. "All employees of said commission shall be subject to the provisions of the merit system.

The commission is authorized to fix by contract the fees or compensation of all architectural and technical employees without regard to the Merit System Act," and the commission is empowered to make all necessary rules for proper conduct of its duties. § 367(2), ·Title 55, 1958 Recompilation of Code of 1940.

Nowhere, however, have we found in the statute authority to fix wages of employees of, contractors who perform the contracts let by the Commission.

The powers delegated to the Commission certainly appear to authorize the Commission to designate the quality and nature of material to be used and the quality of the work to be required. We do not think, however, that the fixing of a minimum wage for employees of the contractor can reasonably or necessarily be expected to tend to insure better quality work under the instant contract. Under a required minimum wage, the unskillful artisan will be guaranteed the same minimum wage as the skillful workman, the indolent the same minimum wage as the industrious craftsman. The power to designate the quality of material to be used does not carry with it the power to require that the contractor must pay a specified minimum price to the seller for each unit of material used, and, by analogy, we do not think the power to designate the quality of workmanship carries with it the power to require that a minimum, hourly, wage shall be paid to all employees of the same class performing the work.

The power to require a minimum, hourly, wage for employees of contractors on public works is a legislative power as we see it. It is the power to "fix and declare a public policy in the matter of wages and conditions of labor on public works." Stover v. Winston Bros. Co., 185 Wash. 416, 55 P.2d 821, 823. In the last cited case, the court held that a workman, who had worked for the contractor in performing a public work contract for a city, was entitled to recover·the minimum wages fixed by a city ordinance which had been incorporated in the contract. The court held that the city had power to adopt the ordinance and that the contractor was estopped from asserting that the city lacked such authority after the contractor had obtained all the benefits flowing to him under the contract. The court recognized that the "main purpose" of the contract "was, without doubt, to provide to the workmen an adequate wage."

In Wagner v. City of Milwaukee, 180 Wis. 640, 192 N.W. 994, also relied on by respondents, the court held valid an ordinance enacted by the city council providing for a minimum wage to be paid by contractors to their employees on public work. The court held that the ordinance did not violate a provision of the city charter which required that contracts be let to the lowest responsible bidder. It was the declared purpose of the ordinance to "insure a living wage to all laborers employed on all city work." In holding the ordinance valid, the court said:

"Assuming, as we are bound to, that the legislative discretion vested in and now exercised by the common council by the enactment of the ordinance in question is the result of its legislative judgment, the courts cannot bring such exercise under their control and substitute something else therefor. The motives which may prompt a legislative body to act in any particular way within its powers is not within the field of judicial scrutiny either as to such subordinate legislative bodies as common councils (Tilly v. Mitchell & Lewis Co., 121 Wis. 1, 11, 98 N.W. 969, 105 Am. St.Rep. 1007), or the Legislature (State ex rel. Haswell v. Cram, 16 Wis. 343, 347). If the result of the ordinance be, as claimed by plaintiff, an economic mistake, a municipal extravagance, and an improper burden upon the taxpayers, that result can be remedied rather by the ballot than by injunction." (192 N.W. at page 996)

We agree that the question whether contractors shall be required to pay a specified, minimum, hourly, wage to employees on public work is a matter addressed to legislative discretion. For the reasons stated, however, we do not agree that the discretion to require such predetermined, minimum, wage is included in the power delegated to the Building Commission by the statutes cited and relied on by respondents in the instant case. Neither do we agree with the authorities cited by respondents.

We point out that we are not here concerned with the construction or validity of any act of the legislature of this state authorizing the Building Commission to determine and fix a minimum wage to be paid by successful bidders on contracts let by the Commission. No such statute has been called to our attention.

The trial court, in the decree appealed from, held that the requirement of a predetermined, minimum, hourly wage in the instant contract violated the provision of the Competitive Bid Law which requires that "The contract shall be awarded to the lowest responsible bidder complying with conditions of the invitation for bids . . . ."

We interpolate here that we understand that the money here under consideration is altogether money of the state.

In Hillig v. City of St. Louis, 337 Mo. 291, 85 S.W.2d 91, petitioners sought an injunction to restrain the City of St. Louis and its Board of Public Service from awarding a paving contract. The trial court sustained a demurrer to the petition on the ground that the facts alleged failed to state a cause of action against respondents. The petition charged that the city had passed an ordinance which prescribed minimum rates of wages to be paid by contractors doing work under contract with the city. The contract in question required that the successful bidder comply with the ordinance. The appellate court reversed the trial court and held the ordinance void for the reason that the ordinance was in contravention of the city charter which required that "all public work" be awarded by contract to the "lowest responsible bidder." The court said:

"  .  .  .  .  The respondent seeks to sustain the ordinance here in question by invoking the well-established principle that the specifications for work to be done under public competition in the execution of public improvements under city charters may in proper cases require the use of articles, apparatus, or commodities held in monopoly if they are shown to be superior, although to do so may result in excluding competition and increasing costs. Swift v. St. Louis, 180 Mo. 80, 79 S.W. 172; Barber Asphalt Paving Co. v. Hunt, 100 Mo. 22, 13 S.W. 98, 8 L.R.A. 110; Wegmann Realty Co. v. City of St. Louis, 329 Mo. 972, 47 S.W.2d 770. But we think the principle just stated cannot properly be applied in the present case. In the execution of public projects some public authority is generally authorized to prepare specifications designating in detail the work to be done. The desired results could not be achieved—nor could any progress be made—if the public authority authorized to act was not accorded a proper and reasonable discretion to require the use of articles, apparatus, or materials of superior quality, although held in monopoly. But it is clear that the exercise of the discretion to specify the use of articles held in monopoly in the execution of public work under city charters must be rather narrowly circumscribed. The public authority acting in the matter must exercise the utmost good faith, the article required to be used must be of superior quality, and its use must be shown to have a tendency to improve the intrinsic quality and character of the work to be done. In our opinion the principles just stated lend no support to the minimum wage ordinance here in question. There is no essential or necessary connection between the hourly wages paid by a contractor and the intrinsic

quality and character of the work done. Furthermore, the ordinance requires the payment of the prescribed hourly wages to all employees irrespective of their experience, skill, or efficiency." (337 Mo. at pages 296, 297, 85 S.W.2d at page 93)

In Philson v. City of Omaha, 167 Neb. 360, 93 N.W.2d 13, the court held invalid ordinances which fixed a requirement that bidders on contracts pay a predetermined, minimum wage. The court quoted from Hillig, supra, and held the ordinances violative of the charter provision "that public contracts shall be let to the lowest responsible bidder."

In Parish Council, etc v. Louisiana Highway, etc., (La.App.), 131 So.2d 272, 298, the court held that the minimum wage requirement of a contract violated the competitive bid law and said:

"We are of the opinion that the better rule, as well as the weight of authority, is to the effect that a provision is a contract for public works, as in the case at bar, requiring the successful bidder-contractor to pay not less than a specified minimum wage, is violative of the charter provisions of the City of Baton Rouge and the Parish of East Baton Rouge, and Title I, Section 701 of the Baton Rouge City Code, which is expressly applicable to the Parish of East Baton Rouge and the City of Baton Rouge, both of which require that the contracts for the work be by competitive bidding and let to the lowest reasonable bidder."

We affirm the holding in the case at bar that the contract provision requiring contractors to pay a predetermined, minimum, hourly, wage violates the Alabama Competitive Bid Law.

Affirmed.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.