395 So.2d 65 (1980)
Ex parte W. E. CARTER.
(Re: W. E. CARTER v. Richard A. FORESTER, as Commissioner of the Department of Conservation of the State of Alabama).
79-604.
Supreme Court of Alabama.
December 19, 1980.
Dissenting Opinion January 9, 1981.
*66 Robert M. Hill, Jr., Florence, for petitioner.
Charles A. Graddick, Atty. Gen. and Robert A. Macrory, Asst. Atty. Gen., for respondent.
SHORES, Justice.
W. E. Carter brought this action against the Commissioner of the Department of Conservation, seeking compensation for 243 raccoons, his private property, which he alleged were taken for public use by the defendant, which he contends entitles him to compensation under the doctrine of inverse condemnation.
The facts were stipulated as follows:
1. Plaintiff, prior to and during the time this cause of action arose, was duly licensed by the State of Florida to raise raccoons for stocking and propagation purposes.
2. On or about May 21, 1977, Plaintiff had in his possession 243 live raccoons, which were being transported under Interstate Health Certificates issued by the State of Florida to a consignee in Lauderdale County, Alabama. Said Interstate Health Certificates were issued by the Florida Department of Agriculture, Division of Animal Husbandry, and were executed by an accredited veterinarian who certified that said raccoons were healthy.
3. On or about May 21, 1977, Plaintiff was arrested by two Alabama Department of Conservation law enforcement officers and charged with "possession of coons during closed season without a permit" and with "selling or offering for sale live raccoons."
4. At the time of the arrest, Plaintiff was consummating the sale of said raccoons to the consignee in Lauderdale County.
5. Plaintiff advised the arresting officers he could not return the raccoons to Florida.
6. Plaintiff was advised that each raccoon could be considered a separate offense but that only one case would be made if Plaintiff released said raccoons in Lauderdale County, Alabama.
7. Plaintiff, in the presence of said officer, released all 243 raccoons in various locations of Lauderdale County at the suggestion of the arresting officers.
8. Plaintiff avers that the release of said raccoons in Lauderdale County, Alabama, constituted a benefit for the State of Alabama, Department of Conservation and Natural Resources and the general public, which Defendant does not deny.
9. The fair market value of said raccoons was $15.00 each.

*67 10. The arresting officers neither requested nor received any instructions from Commissioner John W. Hodnett nor from Commissioner Richard A. Forester concerning the disposition of said 243 raccoons.
The trial court held that the doctrine of inverse condemnation was inapplicable to these facts and further, that the action was in reality a suit against the State and, thus, was barred by § 14 of Article I of the Alabama Constitution. The Court of Civil Appeals affirmed the trial court's judgment, and we granted Carter's petition for writ of certiorari. We affirm the decision of the Court of Civil Appeals and hold that this suit does not lie under an inverse condemnation theory and is barred by Article I, § 14, of the Constitution.
It has been said that an action claiming inverse condemnation is very limited and that all elements must be present. Inverse condemnation is defined as the taking of private property for public use without formal condemnation proceedings and without just compensation being paid by a governmental agency or entity which has the right or power of condemnation. Feder and Wieland, Inverse CondemnationA Viable Alternative, 51 Denver L.R. 529, 530 (1974). These elements are not all present in this case as the last element is missing. Although the animals were indisputably Carter's private property and the action of the officers was an uncompensated taking without condemnation proceedings, which interfered with Carter's property rights in the raccoons and inured to the public benefit, the Department of Conservation does not have the right or power to condemn animals.
Although the Department has the express power to acquire real property by condemnation for state parks and parkways under § 9-2-3 of the Alabama Code of 1975, nowhere is it expressly authorized to acquire privately-owned animals or other personal property by condemnation. A grant of the power of eminent domain, which is one of the attributes of sovereignty most fraught with the possibility of abuse and injustice, can never pass by implication. When the power is granted, the extent of its exercise is limited to the express terms or clear implication of the statute in which the grant is contained. City of Birmingham v. Brown, 241 Ala. 203, 207, 2 So.2d 305 (1941). The legislature has given the Department express power to seize commercial fishing gear used in violation of the provisions of § 9-11-140, et seq., of the Alabama Code of 1975, to hold it for a reasonable time to be claimed by the owner and, in the event that it is not claimed, to confiscate it as the property of the Department, § 9-11-151. Clearly, the legislature has delegated to the Department the police power to seize this particular type of private property and has provided procedural steps for its safe enforcement. This underscores its deliberate non-delegation of the power to condemn privately-owned animals. Although we have said in Denson v. Alabama Polytechnic Institute, 220 Ala. 433, 126 So. 133 (1930), that the right of eminent domain is the offspring of political necessity and is inseparable from sovereignty, and that a state agency has the power to condemn property without express statutory mandate, in that case, unlike the present one, we were able to find a "legislative recognition of this power ... in [the agency] and ... provision for its proper enforcement," 220 Ala. at 435, 126 So. 133. There is no such legislative recognition here and we can only conclude that the legislature did not intend to delegate to the Department such a power. We cannot confer the power by implication. We, therefore, affirm the holding that inverse condemnation did not apply to this case.
The remaining and dispositive issue is whether Carter is prohibited by Article I, § 14, of the Constitution of 1901, from suing the Commissioner of the Department of Conservation for compensation. That section states "that the State of Alabama shall never be made a defendant in any court of law or equity." In determining whether an action against a state officer is barred by § 14, the Court considers the nature of the suit or the relief demanded, not the character *68 of the office of the person against whom the suit is brought. Wallace v. Board of Education of Montgomery County, 280 Ala. 635, 197 So.2d 428 (1967). This Court has held that § 14 prohibits suit against State officers and agents in their official capacity or individually when a result favorable to the plaintiff would directly affect a contract or property right of the State. Southall v. Stricos Corp., 275 Ala. 156, 153 So.2d 234 (1963).
There are four general categories of actions which in Aland v. Graham, 287 Ala. 226, 250 So.2d 677 (1971), we stated do not come within the prohibition of § 14: (1) actions brought to compel State officials to perform their legal duties; (2) actions brought to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial acts; and (4) actions brought under the Declaratory Judgments Act, Tit. 7, § 156, et seq., seeking construction of a statute and its application in a given situation. 287 Ala. at 229-230, 250 So.2d 677. Other actions which are not prohibited by § 14 are: (5) valid inverse condemnation actions brought against State officials in their representative capacity; and (6) actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority or in a mistaken interpretation of law. Wallace v. Board of Education of Montgomery County, supra, 280 Ala. at 639, 197 So.2d 428; Unzicker v. State, 346 So.2d 931, 933 (Ala. 1977); Engelhardt v. Jenkins, 273 Ala. 352, 141 So.2d 193 (1962).
The plaintiff's inverse condemnation action which would not have been barred by § 14 will not lie for the reasons stated earlier. The plaintiff did not base an action on the theory that Richard Forester had exceeded his authority nor did he elect to sue the two individual officers. We agree with the Court of Civil Appeals' finding that if Forester had acted at all, it was as the State pursuant to his statutory authority. The acts complained of were committed by two Department law enforcement officers without any instructions from Forester. They acted either beyond the scope of their authority or under a mistaken application of law. Although the officers might be individually liable for their actions, as a matter of basic agency law, neither the Department nor the Commissioner is liable if the individual officers were acting in violation or excess of their authority. Although a suit against the officers individually is not barred by § 14, Forester is not liable for their actions when they are beyond the scope of their authority either intentionally or by mistaken application of the law, and suit against him is barred by § 14.
We, therefore, affirm the holding of the Court of Civil Appeals.
AFFIRMED.
TORBERT, C. J., and FAULKNER, EMBRY, BEATTY and ADAMS, JJ., concur.
MADDOX and JONES, JJ., dissent.
ALMON, J., not sitting.
MADDOX, Justice (dissenting).
Article I, Section 23, Constitution of Alabama, 1901, provides, in part:
... Private property shall not be taken for, or applied to public use, unless just compensation be first made therefor....
The `coons here involved were the private property of Mr. Carter. They were taken from him and released and were "applied to public use" in the only manner in which wild animals can be applied to public use. If the Constitution of Alabama provides that a citizen's property cannot be taken for public use "unless just compensation be first made therefor ...," how can Section 14 of that same Constitution, which prohibits suits against the State, apply to an action brought to obtain the "just compensation" guaranteed under Section 23?
Section 14 has no application here. In the first place, Section 14 of the Constitution no longer provides the same degree of governmental immunity from suit as it once did, and is now most generally applied to *69 prevent suits against the government for torts committed by its agents which cause personal injury or property damage. Section 14 was never intended to prevent suits against the State of Alabama if the State of Alabama took a person's property and did not compensate him for it.
It could be said that the acts of the conservation officers here were tortious and therefore outside the scope of their authority, but the State has benefitted by their tortious acts. The State has the `coons. At least, they are in the public domain. If the Department of Conservation still had in its possession the `coons here involved, is there any question but that Carter could obtain the return of his property? I think not; therefore, I believe the Department of Conservation, which is a part of the State of Alabama, has taken Carter's property for public use and has not paid him "just compensation" therefor. Consequently, I must respectfully dissent.
JONES, Justice (dissenting):
I respectfully dissent.
I was first inclined to register my dissent without any expression of my reasons for so voting; but the strength of my conviction that this case has been wrongly decided also compels me to set forth the why of my vote.
Let's look at what has happened to "Mr. Carter and his `coons." (Our sense of amusement is soon transcended by the utter seriousness of his predicament.) He left Florida on a perfectly legitimate business trip in order to fulfill a contractual obligation to deliver 243 raccoons to a north Alabama hunting club. Before his mission could be completed, he had been falsely arrested, illegally prosecuted, erroneously found guilty, and unlawfully deprived of his personal property243 raccoons. Mr. Carter, innocent of any wrongdoing whatsoever, returned to his home State of Florida a convicted criminal, who had suffered extreme personal indignation and humiliation, monetary loss by way of expense of his trip and attorney's fee, as well as lost time, plus the loss of his raccoons.
It matters not whether the employees of the Department of Conservation acted negligently, in good faith, in ignorance or out of stupidity, in arresting Mr. Carter and taking his raccoons. They nonetheless acted for the Department and not on their personal behalf. Their agency capacity could hardly be questioned. Whether the Department directed, or had knowledge of, its employees' initial activities in stopping Mr. Carter, arresting him, and confiscating his property is likewise unimportant. The Department of Conservation, at the very least, acquiesced in Mr. Carter's prosecution and procured his conviction (which, incidentally, shields the guilty parties from any malicious prosecution suit. Brown v. Parnell, 386 So.2d 1137 (Ala.1980).)[1] Moreover, the State of Alabama is now 243 raccoons (and their offspring) richer because of the Department's activities in this matter. Surely, the doctrine of ratification estops the State from denying agency. (In fairness to the State, I should add that it does not rely upon this defense.)
By the decisions of the circuit court, the Court of Civil Appeals, and now this Court, Mr. Carter, with all his injuries and damages, is left remediless. It is only fair to say that each of these courts, in its holding, has acted with a sense of apology: "It's just too bad that you can't recover. We're truly sorry. We do not agree that it is right, only that it is the law." It should also be said that abstract justice is not the aim of the law. I agree that the law cannot be shaped and unshaped for individualized application on a case by case basis. But I see no necessity to violate the universally accepted notions of constitutional and common law jurisprudence to effect a just result in this case.
Indeed, I would begin with the constitutional mandate that "... private property shall not be taken ... unless just compensation be first made therefor...." § 23, *70 Constitution of Alabama, 1901. This guarantee, explicit in our organic law, is not subsumed and rendered ineffective by § 14 of our Constitution, which forbids suits against the State. While I believe that resort to the State Constitution is adequate to resolve any conflict between §§ 14 and 23, certainly, the absolutism of § 14 could not withstand a challenge under the due process requirements of the Federal Constitution where the State takes private property without just compensation. See my dissenting opinion in Unzicker v. State, 346 So.2d 931 (Ala.1977).
Finally, I view the majority opinion's rejection of Plaintiff's inverse condemnation theory as rationally unsound. The majority reasons that, because the Department of Conservation has not been legislatively vested with the power of condemnation, one of the requisite elements of the inverse condemnation remedy is missing. The rationale for requiring this as one of the elements of inverse condemnation is that this theory is one of necessity, permitting recovery for public taking of private property where no other remedy exists. If the taking is by an entity not possessed with the power of eminent domain, the law already affords adequate remedies (e. g., trespass, conversion, etc.). I do not disagree with the rule; rather, I have no difficulty in finding its requisite elements present in the instant case.
The State of Alabama has the inherent power of eminent domain, limited only by the constitutional mandate of just compensation and whatever limitations and restrictions may be imposed upon that power through the exercise of legislative prerogatives. That same sovereign entitythe State of Alabamathrough the employees of one of its agencies, the Department of Conservation, wrongfully took Mr. Carter's personal property and converted the same to public use.
The fallacy of the rationale that Plaintiff's claim fails because the legislature has never authorized the Department of Conservation to exercise the right of condemnation can be illustrated in this supposition: Suppose there were no legislative implementation of the State's inherent power of eminent domain authorizing the State Highway Department to take private property for public roads. Surely, this legislative inaction would not abort the operative effect of the remedy of inverse condemnation (thus leaving the property owner remediless) if the highway department in fact takes private property for public use. To be sure, there is something radically wrong with the conclusion that, because the Department of Conservation took Mr. Carter's property without legal authority, its taking, in effect, was lawful.
Furthermore, under the majority opinion's rationale, the State could save millions of dollars by simply relegating all of its condemnation activities to the Department of Conservation. Having no legislative authority to exercise the power to condemn, the Department of Conservation could then take all the property needed by the State for public roads, without any litigation and without any payment. Admittedly, such a practice would be short lived, its cessation coming at the end of some farmer's double-barrel shotgun. This fact, in my mind, lends credibility to, rather than distracts from, the central point of the cited example.
Political tyranny (i. e., the unbridled power of constituted authority) is the greatest threat to individual liberty. Constitutional government is society's organic expression of restraints upon the exercise of this otherwise unbridled power. As Lord Acton said in 1887: "Power tends to corrupt; absolute power corrupts absolutely." Earlier, Daniel Webster lauded constitutional restraints on authority thusly: "Good intentions will always be pleaded for every assumption of authorityit is hardly too strong to say that the Constitution was made to guard the people against the dangers of good intentions." And, in 1912, Woodrow Wilson cautioned: "Liberty has never come from the government. Liberty has always come from the subjects of it. The history of liberty is a history of the limitation of governmental power, not the increase of it.
*71 When we resist therefore the concentration of power, we are resisting the processes of death, because concentration of power is what always precedes the destruction of human liberties."
Here, there is no lack of appropriate constitutional restraints. It is unfortunate that our functional jurisprudence has failed to breathe reality into the guarantees of our organic law. I can only say to Mr. Carter, "I shall continue to dissent 'til your 'coons come home."
NOTES
[1] Mr. Carter was convicted of the criminal charge in the district court. On appeal, as shown in the opinion of the Court of Civil Appeals: "The case against Carter was nol prossed by the circuit court on the basis no criminal act had been committed by him."