MURDOCK, Justice
(concurring specially).
While in the past I have advocated limiting the “beyond-authority” exception to instances where an employee is shown not to be acting within the general line and scope of his or her employment (rather than in violation of some specific provision of an employee handbook), see, e.g., Ex parte Watson, 37 So.3d 752, 766-67 (Ala. 2009) (Murdock, J., concurring in part and dissenting in part), upon further reflection engendered by my consideration of the present case, I would simply eliminate the beyond-authority and the mistaken-interpretation-of-law exceptions to State-agent immunity. The general-line-and-scope requirement is a given,[3] and continued inclusion of these two exceptions, in my view, at best creates confusion and at worst is at cross purposes with the policy concerns underlying, our decisions in Ex parte Cranman, 792. So.2d 392 (Ala. 2000), and Ex parte Butts, 775 So.2d 173 (Ala. 2000).
Before Cranman and Butts, the test in our cases—or at least the articulated test—for whether a State employee or official could be subjected personally to claims for monetary damages for acts committed in the line and scope of his or her employment was whether the act or omission complained of was discretionary in nature. *235 See, e.g., DeStafney v. University of Alabama, 413 So.2d 391, 395-96 (Ala. 1982) (opinion on application for rehearing). Cranman and Butts expressly limited such immunity, which they re-labeled as “State-agent immunity,” to certain affirmatively identified categories of conduct aligned with issues of policy-making, planning, and other functions unique to the State as the state. See 792 So.2d at 401-02; 775 So.2d at 175. In so doing, Cranman and Butts sought to avoid confusion created when employees not engaged in uniquely governmental activities nonetheless sought immunity on the ground that they also exercised discretion in the performance of their duties, e.g., a truck driver exercising discretion in deciding whether to drive over or around a pothole. See Cranman, 792 So.2d at 404.[4]
But while restricting the application of its newly labeled “State-agent immunity” to certain expressly identified types of activities, nowhere did the Cranman Court eliminate consideration of whether, within the context of any such activities, the employee was in fact engaged in an exercise of discretion. To the contrary, 'all but one of the five categories articulated in Cran-man clearly anticipate an activity that requires the exercise of discretion or judgment. And three of those, including the “edueating-students” category at issue here, explicitly require that the employee be involved in the “exercise of judgment” in relation to the activity at issue. 792 So.2d at 405.
Further, the first four exceptions to State-agent immunity listed in Cranman— acts done willfully, maliciously, fraudulent *236 ly, or in bad faith[5]—contemplate activity that does not involve the exercise of such discretion. Obviously, no employee has “discretion” to act in any of these four ways. Moreover, by their very nature, each of these four exceptions require a volitional culpability or scienter on the part of the employee. By definition, an employee cannot act willfully, maliciously, fraudulently, or in bad faith without knowing that he or she is doing so.
But the last two matters included by Cranman in the referenced list of exceptions to State-agent immunity—acts that are “beyond authority” or under “a mistaken interpretation of law”[6]—do not operate in the same manner. The very nature of the activities included in the various Cran-man categories often involve, indeed require, the exercise of discretion—the making of a “judgment call” if you will—as to what the law or some policy manual requires, how, to interpret a statute or. rule, or how to apply a statute or a rule to a particular circumstance. Such decisions commonly are themselves quintessential^ discretionary governmental functions. Yet, given the manner in which these latter two exceptions are articulated in our cases, it appears that an employee loses his or her immunity whenever a court can say, even in hindsight, that the employee was wrong in his dr her' judgment about such a matter, i.e, that his dr her act in fact was contrary to some provision of an employee handbook or was not authorized under some section of the Alabama Code. I am concerned that, as framed in our cases, it matters not that the employee’s mistake was innocent or that it was made in a reasonable, good-faith effort to exercise the -very -type of judgment entrusted to that official to discern, interpret, and apply relevant rules of law: and employment guidelines. This, in my view, sho.uld- not be the law. And I do not think it was intended to be by Cranman inasmuch as it actually is at odds with the fundamental constitutional and policy concerns that drove the Cranman analysis. See 792 So.2d at 396-407.
In fact, although the “beyond-authority” and the “mistaken-interpretation-of-law” exceptions were pulled into the list of exceptions set out in-Cranman, the Cranman opinion engaged in .a wide-ranging discussion of our precedents as to both individual, or discretionary-function, immunity and State sovereign immunity under § 14 of the Alabama Constitution, and these two exceptions are in reality traceable to pre-Cranman cases in the latter category. Specifically, they are traceable tó cases where they were articulated as exceptions to claims of State (not State-agent) immunity where a plaintiff seeks injunctive relief against an official in his or her official capacity to force an official tó do his or her job properly or in accordance with applicable law. See, e.g., Wallace v. Board of Educ. of Montgomery Cty., 280 Ala. 635, 197 So.2d 428 (1967), and St. Clair Cty. v. Town of Riverside, 272 Ala. 294, 128 So.2d 333 (1961). And of course they properly remain to- this day as exceptions to State sovereign immunity when injunctive or declaratory relief is sought against a State official in his or her official capacity. See, e.g., Ex parte Alabama Dep’t of Transp., *237 978 So.2d 17, 22 (2007). That is, in my view, their only necessary and proper role.
Stuart, J., concurs.

. "A public officer acting within the general scope of his authority is not subject to tort liability for an administrative act or omission if
"(a) he is immune because engaged in the exercise of a discretionary function .... ”
Restatement (Second) of Torts § 895D(3) (1979).

. Cranman sought to reach a balance between such fundamental concerns as the separation of powers, the sovereignty of the state itself, and the right of individuals to a remedy for wrongs done:
"We cannot ignore precedents ... clearly recognizing an open door to lawsuits against State agents and written by Justices of this Court who lived, worked, and wrote in an era much closer to the drafting of the Constitution of 1901 than we do. Yet, at the same time, we cannot ignore the strong policy against judicial interference in the affairs of State government as articulated in § 14 and mandated by § 43. Although § 14 is, by its terms, restricted to prohibiting lawsuits against the State, we cannot . disregard its impact upon our obligation to observe the constitutional separation of powers. ... We must, as far as possible, construe §§ 13, 14, 36, and 43 and § 6.01 of Amendment No. 328 [now § 139, Ala. Const. 1901 (Off. Recomp.),] 'as a whole and in the light of [the] entire instrument and to harmonize with other provisions.’ State Docks Comm’n v. State ex rel. Cummings, 227 Ala. 414, 417, 150 So. 345, 346 (1933).
[[Image here]]
"... The time has come to face the necessity of defining ‘injury,’ as that word is used in § 13, in lawsuits against State employees alleging torts committed in the line of duty, in a manner that neither violates § 13 nor prefers § 14or§ 6.01 of the Judicial Article over § 13. We decline to label all discretionary acts by an agent, of the State, or all ' acts by "such an agent involving skill or judgment, as ‘immune’ simply becaúse the State has empowered the agent to act. Such an expansive view of the power of the State to act with immunity for its agents would be inconsistent with the rights secured by § 13."
Cranman, 792 So.2d at 401-05. Although most states continue to, frame their test as simply a distinction between "discretionary" acts and ministerial or operational acts, without identifying specific types or chtegories of qualifying conduct, they nonetheless—-and no less than did this Court in Cranman—recog-nize that immunity for State officials and employees “is based on the separation of powers doctrine” and is available only in relation to "certain policy-making, planning, -or judgmental governmental functions which are inherent in the act of governing and therefore ought not be subjected to scrutiny by judge or jury ... because it would inappropriately entangle the courts in fundamental questions of planning and policy.” Seguine v. City of Miami, 627 So.2d 14, 16-17 (Fla. Dist. Ct. App. 1993).

. “Notwithstanding-anything to the contrary in the foregoing statement of the rule, a State agent shall-not be immune from civil liability in his or her personal capacity
[[Image here]]
"... when the State agent acts willfully, maliciously, fraudulently, in bad'faith, beyond his'or her authority, or under a mistaken interpretation of the law, "•
Ex parte Cranman, 792 So.2d at 405.

. See note 5, supra.