Rel: September 12, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2025

————————————————

### SC-2025-0116

————————————————

**Ex parte Jeff Goodwin, in his official capacity as president of Northwest Shoals Community College**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Anthony Shackelford and Kimberly Y. Miller**

**v.**

**Jeff Goodwin, in his official capacity as president of Northwest Shoals Community College)**

**(Franklin Circuit Court: CV-19-900164)**

LEWIS, Justice.

Jeff Goodwin, in his official capacity as president of Northwest Shoals Community College ("NSCC"), petitions this Court to issue a writ of mandamus to the Franklin Circuit Court ("the trial court") directing it to grant his motion for a summary judgment on the claims filed by Anthony Shackelford and Kimberly Y. Miller, former professors at NSCC ("the former professors"). We grant the petition in part, deny it in part, and issue the writ.

## Procedural History

On September 20, 2019, the former professors filed a complaint against NSCC and Glenda Colagross, in her official capacity as president of NSCC. The complaint included the following factual allegations:

> "… Shackelford was employed by [NSCC] as an Instructor/Wellness Center Director/Intramural Sports Program Director. He worked for [NSCC] for more than 34 years and attained non-probationary status under the terms of the Alabama Student[s] First Act.
>
> "… Miller was employed by [NSCC] as a Fitness Center Wellness Program Manager. She worked for [NSCC] for more than 24 years and attained non-probationary status under the terms of the Alabama Student[s] First Act.
>
> "… On August 9, 2017, the Alabama Community College System Board met and adopted a Reduction in Force [('RIF')] Policy … for [NSCC]. Furthermore, no other Community

College adopted a [RIF] policy at the meeting on August 9, 2017. …

"… The RIF policy adopted on August 9, 2017[,] was pursuant to the Alabama Students First Act[,] which defines a [RIF] as 'layoffs or other personal actions that are unavoidable reductions in the workforce beyond normal attrition due to decreased student enrollment or shortage of revenues as specified in section 16-1-33,[ Ala. Code 1975, and] are not subject to review under this chapter.' The RIF policy adopted by [NSCC] is much more stringent than the Alabama Student[s] First Act or Alabama Code Section 16-1-33.

"… On August 22, 2017, then President of [NSCC], Humphrey Lee, made written request to the Chancellor of the Alabama Community College System, Jimmy Baker, to implement a [RIF]. … [The former professors] were two of the employees included in the RIF. The reasons listed in the August 22, 2017[,] RIF request were persistent decline in enrollment which has led to a loss in revenue, continued increase in expenditures, no additional funding for increased expenditures and that no program offered at [NSCC] requires coursework in Health or Physical Education. …

"… At the President's Cabinet Meeting on September 11, 2017[,] Janet Jones, then comptroller for [NSCC,] disclosed that … $385,000.00 … had been returned to the Department of Education and that the budget for fiscal year 2017-2018 was in the system and that it had been reduced by twenty percent. … Furthermore, … Miller has still not been paid for all twelve … months of her employment contract.

"… Also on September 11, 2017, … Miller received notice that her letter of appointment was ready for her signature. … Miller's letter of appointment was an offer for twelve months of employment …. Miller signed and returned her letter of appointment to the Human Resources Office on September 14, 201[7]. … Shackelford received a letter of appointment on

September 21, 2017[,] one day after receiving notice of the RIF.

"… On September 20, 2017[,] [the former professors] received notice that [their] employment would be terminated on the basis of a [RIF] resulting from decreased student enrollment and lack of funding.  The RIF notice failed to disclose to the [former professors that] a critical consideration in the decision to seek a RIF was that no program offered at the College requires coursework in Health or Physical Education.  [The former professors] were terminated effective December 18, 2017. …

"… [The former professors] did not receive notice that [NSCC] had even amended [its RIF] policy until September 21, 2017.  Furthermore, then college president, Humphrey Lee, sent an email to all faculty and staff notifying them of the amended [RIF policy] that was adopted on August 9, 2017.  The email also stated that if any employee would like to see a copy of the amended policy [they] could go to the Human Resources Office and get a copy.

"… The September 21st email confirmed that the RIF was not included in operating budget for the 2017-2018 fiscal budget but due to shortfalls in the 2017 fall enrollment. …

"… On November 12, 2017, [the former professors] became aware that [NSCC] was under investigation for fraud involving student financial aid and pell grants.  The fraud committed by certain employees of [NSCC] ended up costing [NSCC] well over one million … dollars.  Simply stated, the [former professors] finally learned that they were losing their jobs so that [NSCC] could pay for the wrongs committed by other employees. …

"… In August of 2018, … Miller received notice that [NSCC] was not going to comply with [its] own RIF policy in regards to tuition waiver of one year after the RIF."

The former professors further alleged that the NSCC and its former president "used inaccurate student numbers and false reasons in their request for … said RIF" and that "[t]he critical reasoning for the RIF [--] that no program offered at [NSCC] required coursework in Health and Physical Education [--] is a lie."

The former professors requested that the trial court enter a judgment (1) declaring that NSCC and its former president had failed to comply with the Students First Act, § 16-24C-1 et seq., Ala. Code 1975, in implementing a reduction-in-force ("RIF") policy;  (2) reinstating them to their former positions; and (3) awarding them backpay, benefits, and attorney fees.  On October 17, 2020, NSCC was dismissed as a defendant.

On May 17, 2020, Colagross filed a motion for a summary judgment, along with evidentiary materials in support thereof.  Colagross argued, among other things, that the former professors' claims were barred by the doctrine of State, or sovereign, immunity under § 14 of the Alabama Constitution.  The former professors filed a response to the summary-judgment motion, along with evidentiary materials in support thereof.[1]

---

[1]We note that the former professors did not explicitly address the argument that their claims were barred by State immunity.  However,

Colagross filed motions to strike multiple affidavits submitted by the former professors; however, there is no indication in the materials submitted to this Court that those motions were ruled upon.

On January 15, 2025, the trial court entered an order denying Colagross's summary-judgment motion, stating that there was a genuine issue of material fact as to whether Colagross's predecessor "improperly implemented a local [RIF] policy and then wrongfully used said policy as set forth in the 2011 Student[s] First Act to terminate the [employment of the former professors]." On February 19, 2025, Goodwin, the current president of NSCC,[2] filed a petition for a writ of mandamus to the trial court.

Discussion

---

their complaint was sufficient to put Colagross on notice that they were seeking declaratory and injunctive relief. See Ex parte Moulton, 116 So. 3d 1119, 1133 (Ala. 2013). Therefore, we conclude that the former professors did not waive the argument that their claims for declaratory and injunctive relief were not barred by State immunity. See id.

[2]"Rule 25, Ala. R. Civ. P., provides that when a public officer is a party to an action in his official capacity, and that officer ceases to hold office, the officer's successor is automatically substituted." Ex parte State Dep't of Hum. Res., 950 So. 2d 1165, 1170 n.6 (Ala. Civ. App. 2004).

In his petition, Goodwin first argues that the trial court erred in denying the summary-judgment motion because, he says, he is entitled to State immunity.

> "For a writ of mandamus to issue, [the petitioner] must show '"'"(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court."'"' Ex parte Utilities Bd. of Foley, 265 So. 3d 1273, 1279 (Ala. 2018) (citations omitted).

> "'"'While the general rule is that the denial of a motion for summary judgment is not reviewable, the exception is that the denial of a motion for summary judgment grounded on a claim of immunity is reviewable by petition for writ of mandamus.'"' Ex parte City of Montgomery, 272 So. 3d 155, 159 (Ala. 2018) (citations and emphasis omitted). Whether review of the denial of a summary-judgment motion is by mandamus or appeal, our '"standard of review remains the same,"' meaning that we review legal questions de novo and resolve all factual disputes in favor of the nonmoving party …. Id. (citation omitted). Ultimately, if '"there is a genuine issue as to any material fact on the question whether the movant is entitled to immunity, then the moving party is not entitled to a summary judgment."' Id. (citation omitted)."

Ex parte Pinkard, 373 So. 3d 192, 198 (Ala. 2022).

This Court has explained the doctrine of State immunity as it relates to state officials and the exceptions thereto as follows:

> "It is well settled law that the State is generally immune from liability under § 14, Alabama Constitution of 1901. It is

7

also well settled that the State cannot be sued indirectly by suing an officer in his or her official capacity.

> "'Sovereign immunity is a jurisdictional bar that deprives a court of subject-matter jurisdiction. Ex parte Dep't of Mental Health & Mental Retardation, 837 So. 2d 808, 810-11 (Ala. 2002). The principle of sovereign immunity, set forth in Article I, § 14, Alabama Constitution of 1901, is a wall that is "nearly impregnable." Patterson v. Gladwin Corp., 835 So. 2d 137, 142 (Ala. 2002). The implications of sovereign immunity are "'not only that the state itself may not be sued, but that this cannot be indirectly accomplished by suing its officers or agents in their official capacity, when a result favorable to plaintiff would be directly to affect the financial status of the state treasury.'" Patterson, 835 So. 2d at 142 (quoting State Docks Comm'n v. Barnes, 225 Ala. 403, 405, 143 So. 581, 582 (1932)).'

"Ex parte Alabama Dep't of Mental Health & Mental Retardation, 937 So. 2d 1018, 1022-23 (Ala. 2006).

> "....

"Section 14 immunity, however, is not always absolute; there are actions against State officials that are not barred by the general rule of sovereign immunity.

> "'[C]ertain actions are not barred by § 14. There are six general categories of actions that do not come within the prohibition of § 14: (1) actions brought to compel State officials to perform their legal duties; (2) actions brought to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial acts; (4) actions brought against State

officials under the Declaratory Judgments Act, Ala. Code 1975, § 6-6-220 et seq., seeking construction of a statute and its application in a given situation; (5) valid inverse condemnation actions brought against State officials in their representative capacity; and (6) actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law. See Drummond Co. v. Alabama Dep't of Transp., 937 So. 2d 56, 58 (Ala. 2006)(quoting Ex parte Carter, 395 So. 2d 65, 68 (Ala. 1980)); Alabama Dep't of Transp. v. Harbert Int'l, Inc., 990 So. 2d 831 (Ala. 2008) (holding that the exception for declaratory-judgment actions applies only to actions against State officials). As we confirmed in Harbert, these "exceptions" to sovereign immunity apply only to actions brought against State officials; they do not apply to actions against the State or against State agencies. See Alabama Dep't of Transp., 990 So. 2d at 840-41.'

"Ex parte Alabama Dep't of Fin., 991 So. 2d 1254, 1256-57 (Ala. 2008). In Ex parte Moulton, 116 So. 3d 1119 (Ala. 2013), this Court clarified and restated the sixth exception to § 14 immunity set forth in Drummond Co. v. Alabama Department of Transportation, 937 So. 2d 56, 58 (Ala. 2006), by holding that the exception applies only to the following:

"'(6)(a) actions for injunction brought against State officials in their representative capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, Wallace v. Board of Education of Montgomery County, 280 Ala. 635, 197 So. 2d 428 (1967), and (b) actions for

9

> damages brought against State officials in their individual capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law, subject to the limitation that the action not be, in effect, one against the State. Phillips v. Thomas, 555 So. 2d 81, 83 (Ala. 1989).'

"116 So. 3d at 1141."

Ex parte Wilcox Cnty. Bd. of Educ., 279 So. 3d 1135, 1140-42 (Ala. 2018).

In this case, the former professors sought the following remedies: (1) a declaration that NSCC and its former president had failed to comply with the Students First Act in implementing an RIF policy; (2) reinstatement to their former positions; and (3) an award of backpay, benefits, and attorney fees.

To the extent that the former professors seek monetary damages -- an award of backpay, benefits, and attorney fees -- their claims are clearly barred by State immunity because those damages would affect the state treasury. See, e.g., Wilcox, 279 So. 3d at 1142. The former professors concede this issue in their answer to the petition and consent to the issuance of a writ of mandamus on this point. We conclude that the trial court erred in denying the summary-judgment motion with respect to the claims for backpay, benefits, and attorney fees. Therefore,

10

Goodwin has established a clear legal right to the entry of a summary judgment on those claims.

To the extent that the former professors "seek[] a judgment declaring [their] rights under [the Students First Act] and injunctive relief in the form of reinstatement[,] [their claims] satisfy, at least, the fourth and sixth exceptions recognized in Ex parte Wilcox County Board of Education." Ex parte Alabama Dep't of Youth Servs., 401 So. 3d 276, 284 (Ala. 2024). Specifically, the claim for declaratory relief falls within the fourth exception for "actions brought against State officials under the Declaratory Judgments Act, Ala. Code 1975, § 6-6-220 et seq., seeking construction of a statute and its application in a given situation." Ex parte Alabama Dep't of Fin., 991 So. 2d 1254, 1257 (Ala. 2008). As explained further below, the claim for injunctive relief (i.e., reinstatement to their former positions) falls within the sixth exception for "actions for injunction brought against State officials in their representative capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law." Ex parte Moulton, 116 So. 3d 1119, 1141 (Ala. 2006).

As noted previously, after considering the parties' arguments and evidentiary materials, the trial court concluded that that there was a genuine issue of material fact as to whether NSCC's former president "improperly implemented a local [RIF] policy and then wrongfully used said policy as set forth in the 2011 Student[s] First Act to terminate the [employment of the former professors]." Indeed, the former professors alleged that NSCC's former president "used inaccurate student numbers and false reasons in [the] request for … said RIF" and that "[t]he critical reasoning for the RIF [--] that no program offered at [NSCC] required coursework in Health and Physical Education [--] is a lie." The former professors submitted multiple affidavits in support of their allegation that the bases for the RIF were fraudulent. Therefore, "although our decision should not be construed as commenting on the merits of [the former professors'] claims against [Goodwin]," we conclude that the former professors' claims seeking declaratory and injunctive relief are not barred by principles of State immunity. Alabama Dep't of Youth Servs., 401 So. 3d at 284-85.

Goodwin asserts that, "by seeking reinstatement, [the former professors] are seeking to have the RIF overturned, the Health and

Physical Education Departments resurrected and themselves reinstated in now nonexistent departments." Petition at 24. He further argues that "[s]uch requested relief directly affects N[]SCC's contract and property rights, which is also barred by immunity." Id. at 25. However, if, as the former professors' evidence indicates, the RIF was fraudulent, such a challenge is not barred by State immunity. See, e.g., Ex parte Cooper, 390 So. 3d 1030, 1038 (Ala. 2023) ("[Section] 14 [of the Alabama Constitution] does not operate to bar a properly brought action when it is shown that the State contract being challenged is illegal or unconstitutional.").

Goodwin also argues that the former professors were employees at-will whose employment was terminated pursuant to the RIF and, therefore, that they have no right to review of the terminations of their employment. He further argues that the former professors' request for reinstatement is now moot because NSCC's Health and Physical Education Department has been closed. However, the former professors' complaint challenges the RIF that led to that department's closure. Therefore, the mootness issue must be considered in relation to the merits of the former professors' claims. However, this Court "will not

consider secondary arguments that a summary judgment was appropriate on … grounds [other than immunity] or review the trial court's conclusions on other issues." Ex parte Smith, 327 So. 3d 184, 187 (Ala. 2020).

Based on the foregoing, we conclude that the trial court properly denied the summary-judgment motion with respect to the former professors' claims seeking declaratory and injunctive relief. See id. Accordingly, Goodwin has not established a clear legal right to the entry of a summary judgment with respect to those claims. See id.

Conclusion

Based on the foregoing, we grant Goodwin's petition in part and direct the trial court to enter a summary judgment in his favor to the extent that the former professors seek an award of backpay, benefits, and attorney fees. The petition is denied in all other respects.

PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.

Stewart, C.J., and Wise, Sellers, Mendheim, and McCool, JJ., concur.

Shaw, J., concurs in the result, with opinion, which Cook, J., joins.

Bryan, J., concurs in the result.

SHAW, Justice (concurring in the result).

I respectfully concur in the result.

The main opinion, as I read it, does not hold that Ala. Const. 2022, Art. I, § 14, would not bar a claim to require that a now-closed department of Northwest Shoals Community College be reconstituted, even if it had been improperly shuttered. Such injunctive relief against a state official would, in effect, amount to action against the State.

> "'Section 14 prohibits actions against state officers in their official capacities when those actions are, in effect, actions against the State.' Haley v. Barbour County, 885 So. 2d 783, 788 (Ala. 2004). To determine whether an action against a State officer is, in fact, one against the State, this Court considers
>
>> "'whether "a result favorable to the plaintiff would directly affect a contract or property right of the State," Mitchell [v. Davis, 598 So. 2d 801, 806 (Ala. 1992)], whether the defendant is simply a "conduit" through which the plaintiff seeks recovery of damages from the State, Barnes v. Dale, 530 So. 2d 770, 784 (Ala. 1988), and whether "a judgment against the officer would directly affect the financial status of the State treasury," Lyons [v. River Road Constr., Inc.], 858 So. 2d [257] at 261 [(Ala. 2003)].'
>
> "Haley, 885 So. 2d at 788."

Alabama Dep't of Transp. v. Harbert Int'l, Inc., 990 So. 2d 831, 839 (Ala. 2008) (emphasis added).

In Ex parte Alabama Department of Youth Services, 401 So. 3d 276 (Ala. 2024), a former employee of a state agency who alleged that his employment had been improperly terminated commenced an action against a state official seeking injunctive relief requiring that he be reinstated to his former employment. Prior caselaw had allowed such claims to proceed under certain "exceptions" to § 14. 401 So. 3d at 284-85. Whether it was feasible to reinstate that employee without otherwise directly affecting the financial status of the state treasury was not an issue addressed in that case.

Under the authority of Ex parte Alabama Department of Youth Services, certain claims of the plaintiffs in this case are not barred on their face by § 14. The plaintiffs contend that they seek reinstatement "to their 'prior employment positions' -- that is, instructor positions -- and not necessarily to the precise jobs or assignments they previously held." Answer at 21. If their underlying claims have merit, whether the relief they seek -- reinstatement as employees of Northwest Shoals Community

16

College -- can nevertheless not be afforded without violating § 14 is an issue I cannot yet determine.

Cook, J., concurs.