Defendants below, the Treasurer, Comptroller, and Finance Director of the State of Alabama, appeal from a final judgment ordering payment by the State of $124,350, plus interest, to plaintiff, Jere Beasley. The trial court determined that monthly expense allowances totalling that amount were wrongfully withheld from Beasley during his eight-year tenure in office as Lieutenant Governor of Alabama, over defendants' arguments that the legislative resolutions which authorized the expense allowance were in violation of several provisions of the Alabama Constitution.
Beasley served two terms as Lieutenant Governor, from 18 January 1971, until 15 January 1979. Early during his first term in office, House Joint Resolution 223 (Acts of Alabama, 1971 Regular Session, Act No. 1196) was passed; it was introduced and passed as a resolution rather than as a bill to be entitled an act.
H.J.R. 223 provided, inter alia, for payment of the "reasonable expenses of the presiding officer of each House of the Legislature incurred in the performance of their duties" and "while on business of the State." Shortly thereafter, Senate Resolution 112 of the Regular Session of the 1971 Legislature, stating as its purpose the clarification of H.J.R. 223, was passed to provide for payment of the Lieutenant Governor's "actual and necessary expenses" in the form of an expense allowance, the amount of which was to be set by the Senate Ethics Committee. That allowance was to be paid "in addition to the monthly expenses now allowed to the Lieutenant Governor."
Subsequently, the Senate Ethics Committee set the expense allowance at a fixed sum of $1500 per month. The Comptroller initially authorized several payments in that amount to Beasley, but ceased such payments after receiving an advisory opinion from the Attorney General that the two resolutions authorizing the expense allowance were unconstitutional.
In September of 1979, approximately eight months after leaving office, Beasley brought this action seeking a judgment declaring that H.J.R. 223 and S.R. 112 of the 1971 Regular Session were valid and constitutional, and to compel defendants to pay him $1500 for each month during his terms in office during which the expense allowance was withheld, plus interests, costs, and attorney's fees. Following trial, in which the evidence was adduced ore tenus, the trial court granted the relief requested, with the exception of attorney's fees. The trial court also enjoined defendants from further withholding the $124,350 plus interest, the amount owed Beasley.
In this appeal, the State essentially reiterates the issues raised below. The validity of the two resolutions and Beasley's right to bring this action are questioned because of impediments allegedly found in numerous state constitutional and statutory provisions. Looking initially to the language of *Page 43 
the resolutions challenged, the operative passage of H.J.R. 223 reads:
 "BE IT RESOLVED BY THE LEGISLATURE OF ALABAMA, BOTH HOUSES THEREOF CONCURRING, That the staff of the Legislature is hereby increased by the addition of one secretary for the Legislative Committee on Public Accounts, one administrative assistant each and one additional secretary each for the respective presiding officers of each house whose salaries shall be set by the Clerk of the House and the Secretary of the Senate. The Clerk of the House of Representatives and the Secretary of the Senate are hereby instructed to pay out of funds appropriated to the use of the Legislature the reasonable expenses of the presiding officers of each House of the Legislature incurred in the performance of their duties. In addition to the above, the Clerk of the House and the Secretary of the Senate shall pay the reasonable expenses of the presiding officers incurred within or without the State while on business of the State and including the salaries and actual travel expenses of the individuals included in the above additions to the legislature's staff and such other office expenses, equipment and supplies reasonably necessary to the operation of the aforesaid offices."
The pertinent portion of S.R. 112 states:
 "BE IT RESOLVED BY THE SENATE OF ALABAMA AS FOLLOWS:
 "1. That the Secretary of the Senate is hereby directed to carry out the provisions of the aforesaid H.J.R. [223] as directed by the Lieutenant Governor.
 "2. That the term `expenses' referred to in said H.J.R. shall include, but but [sic] not be limited to, all actual and necessary expenses incurred by the Lieutenant Governor's office which shall include all office supplies, stationery, postage and postal charges, telegrams, telephones and telephone service, equipment purchases and rentals, maintenance and repairs on equipment, travel, and other miscellaneous expenses incurred by the Lieutenant Governor related to the carrying out of the duties of his office, as directed by the Lieutenant Governor.
 "3. That in addition to the monthly expense payment now allowed to the Lieutenant Governor, an additional sum shall be paid to the Lieutenant Governor each month in the form of an allowance for reasonable and necessary expenses incurred in the exercise of his official duties not otherwise provided for by law. The amount of said expense allowance shall be determined and set by the Senate Ethics Committee, which said Committee shall promptly advise the Secretary of the Senate. This monthly expense allowance shall be paid for only as long as the Lieutenant Governor maintains a residence in Montgomery and maintains a full time office in the State Capitol.
 "4. This resolution shall in no way affect the validity of H.J.R. 223, but is intended to clarify certain portions thereof.
 "5. All of the above mentioned sums are to be paid as directed in said H.J.R. from funds specified therein."
The State contends the monthly payments denominated as an allowance for expenses in fact represented an increase in Beasley's salary or compensation, in contravention of Sections 67, 118, and 281 and Amendment 92 of the Alabama Constitution. These sections variously provide that the compensation of public officers shall be fixed by law and shall not be increased or decreased during their terms in office.
A resolution is not a law but merely the form in which the Legislature expresses an opinion. The Legislature has no power to make laws by resolution. Hall v. Blan, 227 Ala. 64,148 So. 601 (1933). Furthermore, as previously mentioned, the resolutions in question were passed during Beasley's first term in office. Consequently, if the State is correct in its assertion that the monthly allowance represented increased compensation to Beasley, payments thereof pursuant to H.J.R. 223 and S.R. 112 would violate the Constitutional provisions cited by the State. *Page 44 
Our cynosure for this inquiry is Hart v. deGraffenried,388 So.2d 1196 (Ala. 1980), involving a legislative resolution increasing the per diem and monthly expense allowance of legislators during their terms in office, challenged as violative of, inter alia, Sections 281 and Amendment 92, for the same reasons assigned by the State here with respect to these provisions and Sections 67 and 118. As we commented inHart:
 ". . . This necessarily raises the question of whether any portion of the increased expense allowances represents compensation for services rendered as opposed to reimbursement for expenses incurred.
". . . .
 "We are persuaded that under the applicable provisions of the Alabama Constitution the payment of legislative expense allowances has never been considered any part of the personal compensation awarded to Alabama legislators; rather, these expense allowances exist as a means of reimbursing legislators for expenditures incurred in being called away from home in service to the state and in carrying on their official responsibilities. On the basis of this conclusion, we hold that the enactment of S.J.R. 13 does not violate Section 281 or Amendment 92 by increasing a legislator's compensation during his term in office."
In reaching that conclusion, however, we quoted with approval from Manning v. Sims, 308 Ky. 587, 213 S.W.2d 577 (1948):
 ". . . that the allowance of reasonable expenses incurred in the discharge of official duties of an office is neither salary, compensation, nor emoluments of office within the purview of a constitutional prohibition against a change in compensation during the term." (Emphasis added.)
We then noted:
 ". . . Plaintiffs in the present case, did not question the reasonableness of the increase in expenses;. . . ."
To the contrary, however, in the case sub judice, the State does vigorously contest the reasonableness of the expense allowance granted Beasley. With regard to the issue of reasonableness the final judgment of the trial court concluded as follows:
 "The Court finds from the facts that the `fixing' of $1.500.00 per month as an expense allowance was proper and, in fact, was a reasonable amount as an expense allowance and specifically finds that no part of said amount constitutes compensation, but instead that all constitutes a reasonable amount for expense allowance."
The question of reasonableness is one of fact to be resolved by the trier of fact, in this case the trial court receiving the evidence ore tenus. Where the evidence is heard ore tenus, the court will not disturb factual findings of the trial court unless clearly erroneous or manifestly unjust. J.C. JacobsBanking Co. v. Campbell, 406 So.2d 834 (Ala. 1981).
The evidence presented by Beasley at trial tended to show that the responsibilities of the Lieutenant Governor increased substantially during his terms in office. This was largely attributable to an increase in the number of committees on which the Lieutenant Governor served as an appointee of the Governor or by direction of the statutes which created those committees, and an increase in the number of appearances made by the Lieutenant Governor on behalf of the state, particularly after the attempted assassination of then-Governor George C. Wallace. Also, Beasley maintained a residence in Montgomery as authorized by S.R. 112, in addition to his home in Clayton, requiring a duplication of living expenses.
The State, on the other hand, produced evidence that prior to and after passage of the resolution, office supplies, employee salaries, telephone, stationery, postage, equipment purchases, rental, travel, and other items were paid for by the Secretary of the Senate out of appropriations for the Legislature when Beasley presented vouchers for such expenses. Additionally, he was receiving the $300 monthly expense allowance received by all members of the Legislature. *Page 45 
The State also points to the testimony of former Senator George Lewis Bailes, a member of the Senate Ethics Committee at that time, which set the amount of the monthly allowance at $1500, that the allowance was for Beasley's "extraordinary and unusual living expenses" and that it would have been a financial strain for him "to serve in office under the requirements of the resolution without some additional compensation."
Finally, the State cites the testimony of Ronald Bird, an economist, who testified that a reasonable increase in the Lieutenant Governor's expenses would have been approximately $115 monthly based on a formula incorporating economic variables such as the increase in inflation, and in duties of the Lieutenant Governor resulting from population growth and increased complexity in state government. However, on cross-examination, it was revealed that Bird was unaware of, and thus did not include in his analysis, many of the committee positions held by Beasley, the fact that he maintained a second residence with attendant costs, and several other factors which the trial court could have properly concluded were relevant to the determination of what constituted a reasonable increase in the Lieutenant Governor's expense allowance.
Beasley also produced evidence of payment by him of numerous legitimate expenses for which he was not reimbursed including printed material distributed to visiting members of the public and to public schools, travel expenses, and various office expenses incident to the operation of the Lieutenant Governor's office.
We have thoroughly reviewed the record and find ample credible evidence to support the trial court's finding that $1500 monthly was a reasonable amount for Beasley's expenses and therefore that sum did not constitute compensation to him in whole or in part.
Having determined that the allowance did not constitute compensation, we need not address those constitutional provisions cited by the State which require an increase in compensation to be accomplished by law, and which prohibit an increase in compensation to an officer during his term of office. Without regard to the question of compensationvis-a-vis expenses, however, the State contends there is no constitutional or statutory authority for the Legislature to provide an expense allowance for the Lieutenant Governor by resolution.
In Hart v. deGraffenried, supra, we held that the Legislature may fix expense allowances in the manner it deems most appropriate, including by resolution. The State, nevertheless, argues that Hart is not controlling on the question here presented because it construed Amendment 57 of the Alabama Constitution, which concerns "members of the Legislature." The Lieutenant Governor is a member of the executive branch under § 112 of the Constitution and is not mentioned in § 50 of the Constitution, which provides that the Legislature consists of senators and representatives.
While we agree that Amendment 57, and our interpretation of it in Hart, do not directly apply to the Lieutenant Governor, we do consider highly relevant to the issue at hand the following principles enunciated in Hart:
 ". . . The Legislature is laden with a broad form of governmental power which is plenary in character, and subject only to those express limitations appearing in the Constitution. As noted by this Court in County Board of Education v. Taxpayers and Citizens, 276 Ala. 472, 163 So.2d 629 (1964):
 `There are no limits to the legislative power of state governments save those written into its constitution. All that the legislature is not forbidden to do by the organic law, state or federal, it has full power to do. The power of the legislature except as limited by constitutional provisions is as plenary as that of the British Parliament. Finklea v. Farish, 160 Ala. 230, 49 So. 366; State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487, 121 A.L.R. 283.' . . .
 See also Hall v. Underwood, 258 Ala. 392, 63 So.2d 683 (1953), and Riley v. Bradley, 252 Ala. 282, 41 So.2d 641 (1948)." (Emphasis supplied in Hart.) *Page 46 
Consistent with these principles is the view expressed in 82 C.J.S. Statutes § 20 (1953):
 ". . . [L]egislative bodies have the inherent power to express legislative will by joint resolution on all matters which the constitution does not require to be adopted with the formalities prescribed as essential to the passage of a law. It has been held that the legislature can pass a resolution giving force and effect to another resolution which did not attempt to perform the function of a law but was . . . to provide expenses incident to legislative session."
See also, 72 Am.Jur.2d States § 42 (1974).
Although the Alabama Constitution does not expressly grant to the Legislature the authority to set an expense allowance for the Lieutenant Governor by resolution, neither does it expressly prohibit the Legislature from such a course of action. In view of the plenary powers of the Legislature in the absence of constitutional limitations, we hold that it was not improper for the Legislature to set an expense allowance for the Lieutenant Governor by resolution.
The State next contends that the resolutions in question violate Sections 71 and 72 of the Constitution. Once again our point of reference is Hart, wherein we stated:
 "The final issue we address is based upon the question of whether there exists any legislative appropriation of monies to pay for the increased expense allowances contemplated under S.J.R. 13. This consideration is significant in view of the provisions of Article IV, § 72 of the Alabama Constitution, which provides, in part, that `[n]o money shall be paid out of the treasury except upon appropriations made by law. . . .' Appellants contend that since no law was enacted to meet the specific purposes of S.J.R. 13, any disbursement of public monies in payment of the increased expense allowances is unauthorized and unconstitutional.
 "Appellants erroneously conclude that there was no law passed authorizing the payment of the expense allowances provided for by S.J.R. 13. Section 71 of the Constitution provides, in part, that `[t]he general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative, and judicial departments of the state. . . .' The Legislature, during the 1978 Regular Session passed a general appropriation bill which, in its title expressed this purpose:
 `To make appropriations for the ordinary expenses of the executive, legislative and judicial departments of the State . . . for the fiscal year beginning October 1, 1978.'
 Act No. 597, Regular Session, 1978, Acts of Alabama, Vol. II, p. 723.
 "Looking to the provisions of Act No. 597, we conclude that there existed a sufficient appropriation to encompass the increased expense allowances provided for by S.J.R. 13. As noted in Section 71 of Article IV of the Constitution, the general appropriation bill serves the purpose of `embracing' all the ordinary expenses of the Legislature. This necessarily included increased expenses provided for by legislative action, and all other expenses which, although unexpected, were necessary. We, therefore, cannot agree with the appellants in their assertions that a law had to be enacted to meet the specific purpose of S.J.R. 13. Sufficient appropriation had already been made." (Emphasis in Hart.)
Clearly, the resolutions challenged here provide for payment of the Lieutenant Governor's expenses from funds already appropriated, i.e., funds appropriated "to the use of the Legislature." The question which remains is whether expenses of the Lieutenant Governor, as opposed to expenses of members of the Legislature, may properly be paid out of funds appropriated "to the use of the Legislature."
It is true, as the State has argued with respect to other issues raised, that the office of Lieutenant Governor is placed within the executive branch of state government under § 112 of the Constitution. It is equally true, however, that the only constitutional duty imposed upon the Lieutenant *Page 47 
Governor (unless the Governor is removed, dies, or becomes incapacitated), that of presiding over the Senate, Const. 1901, § 117, is legislative in nature. The other responsibilities of the office, primarily involving service on legislative committees, are also largely legislative in nature.
Additionally, the uncontradicted testimony at trial was that no Lieutenant Governor of the State had ever received a separate appropriation, while all Lieutenant Governors of the State had received reimbursement for expenses from funds appropriated to the Legislature.
We are of the opinion that the Legislature could properly set an expense allowance for the Lieutenant Governor to be paid out of funds appropriated "to the use of the Legislature." "Use means usefulness, utility, advantage, productive of benefit." 43A Words and Phrases, Use: Used, p. 251 (1969). Surely, there can be no serious contention that the functions of the office of Lieutenant Governor do not directly serve to the advantage, benefit and utility of the Legislature.
The State also contends the resolutions imposed new duties upon the Lieutenant Governor in violation of Section 67 and Amendment 92 of the Constitution, which require such an increase in duties to be accomplished by law. We find no merit in this contention, as the resolutions merely recognized the increased responsibilities and concomitant increased expenses of the Lieutenant Governor as the reason for increasing his expense allowance. As for the residence in Montgomery and full time office in the state capitol, these were not additional duties of office imposed upon Beasley by the resolutions, but rather conditions for payment of the expense allowance. As S.R. 112 states:
 "This monthly expense allowance shall be paid for only as long as the Lieutenant Governor maintains a residence in Montgomery and maintains a full time office in the State Capitol." (Emphasis added.)
A violation of Code 1975, § 29-4-2, is also contended by the State to have resulted. This statute provides:
 "The number of subordinate officers and employees of the legislature, as provided in this chapter, and their respective salaries or rates of compensation or maximum permissible rates of compensation as are fixed by law upon the effective date of this Code, shall not be increased or changed, except by legislative enactment as required by the Constitution and laws of Alabama. Neither house shall have the power or authority by resolution, except as stated in this chapter, to add to the number or compensation of such officers or employees."
H.J.R. 223, in addition to providing for additional expense monies for the presiding officer of each house, attempted to add three subordinate employees to the staff of the Legislature. This conflict with Code 1975, § 29-4-2, was apparently realized at a later time by the Legislature, which then specifically authorized the addition of these staff employees by law; nevertheless, the State contends that if any portion of the resolution is invalid, the entire resolution is incurably infected and must be declared invalid. However, the authority cited by the State for this proposition, City ofMobile v. Salter, 287 Ala. 660, 255 So.2d 5 (1971), made it clear that application of this rule turns on the relationship of the offensive portions of an act to the remaining passages. Quoting from Allen v. Walker County, 281 Ala. 156,199 So.2d 854 (1967), this court reasoned:
 ". . . If the act . . . deleted of the invalid part is competent to stand without the invalid part, and leaves an enactment complete within itself, sensible, and capable of being executed, it will stand, unless the two parts — the valid and invalid — are so inseparable as to raise the presumption that the Legislature would not have enacted the one without the other. . . ." (Emphasis added in City of Mobile v. Salter.)
We consider these principles of construction applicable to a resolution contested as invalid on the basis that one part thereof conflicts with a statute. Furthermore, *Page 48 
we think the provisions authorizing expense money for the presiding officers of each of the two houses of the Legislature are in no way dependent on, or inseparably linked with, those provisions for addition of legislative staff employees which conflict with Code 1975, § 29-4-2. Consequently, we find that those portions of H.J.R. 223 which operate to provide expense monies for the Lieutenant Governor can stand alone, without contravening § 29-4-2.
The final matter which we consider is whether this suit is barred by Article 1, Section 14, of the Alabama Constitution. This question is actually the threshold issue in this case, but because its resolution depends on our conclusions regarding other issues presented, we have reserved consideration of Section 14 until last.
Section 14 prohibits the State from being made a defendant in any court of this state and neither the State nor any individual can consent to a suit against the State. Aland v.Graham, 287 Ala. 226, 250 So.2d 677 (1971). The application of Section 14 to suits against officers of the State was treated in Ex parte Carter, 395 So.2d 65 (Ala. 1980), as follows:
 ". . . In determining whether an action against a state officer is barred by § 14, the Court considers the nature of the suit or the relief demanded, not the character of the office of the person against whom the suit is brought. Wallace v. Board of Education of Montgomery County, 280 Ala. 635, 197 So.2d 428 (1967). This Court has held that § 14 prohibits suit against State officers and agents in their official capacity or individually when a result favorable to the plaintiff would directly affect a contract or property right of the State. Southall v. Stricos Corp., 275 Ala. 156, 153 So.2d 234 (1963).
 "There are four general categories of actions which in Aland v. Graham, 287 Ala. 226, 250 So.2d 677
(1971), we stated do not come within the prohibition of § 14: (1) actions brought to compel State officials to perform their legal duties; (2) actions brought to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial acts; and (4) actions brought under the Declaratory Judgments Act, Tit. 7, § 156, et seq., seeking construction of a statute and its application in a given situation. 287 Ala. at 229-230, 250 So.2d 677. Other actions which are not prohibited by § 14 are: (5) valid inverse condemnation actions brought against State officials in their representative capacity; and (6) actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority or in a mistaken interpretation of law. Wallace v. Board of Education of Montgomery County, supra, 280 Ala. at 639, 197 So.2d 428; Unzicker v. State, 346 So.2d 931, 933 (Ala. 1977); Engelhardt v. Jenkins, 273 Ala. 352, 141 So.2d 193 (1962)."
We are of the opinion that this action is in the nature of both an action to compel State officers to perform their legal duties and an action to enjoin State officers who have acted under a mistaken interpretation of the law.
As previously noted, defendants, in the exercise of their respective functions, caused cessation of payment to Beasley after receiving an advisory opinion from the Attorney General that the resolutions authorizing the expense allowance for the Lieutenant Governor were unconstitutional. That advisory opinion was based upon Section 67 of the Constitution and Code 1940, Title 32, Section 28 (the latter being the precursor provision of Code 1975, § 29-4-2), as well as upon Hall v.Blan, 227 Ala. 64, 148 So. 601 (1933). We have already determined that these constitutional and statutory provisions do not invalidate the provisions of H.J.R. 223 and S.R. 112 contested in this suit. Moreover, we note the holding of Hallv. Blan was expressly overruled in Hart v. deGraffenried,supra, on which authority today's opinion primarily rests.
We therefore conclude the Attorney General was acting under a mistaken interpretation *Page 49 
of the law in advising nonpayment of expense monies authorized by H.J.R. 223 and S.R. 112. We further hold that defendants in refusing to make these payments to Beasley failed to perform their legal duties. It follows that this is not a suit barred by Article 1, Section 14, of the Alabama Constitution.
Having determined that H.J.R. 223 and S.R. 112 do not offend any of the constitutional and statutory provisions against which the State challenges their validity, and having further found ample evidence to support the trial court's findings of fact, the judgment below is due to be and is hereby affirmed in all respects.
AFFIRMED.
TORBERT, C.J., and MADDOX, FAULKNER, JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.