The plaintiff, Paul Stark, appeals from the granting of a motion to dismiss in favor of defendant Troy State University and from a summary judgment granted in favor of defendants Dr. Ralph W. Adams, individually and as Chancellor of the Troy State University System, and Robert M. Paul, individually and as Chief Executive Officer of Troy State University at Dothan/Ft. Rucker,[1] in this declaratory judgment action seeking an injunction and compensatory damages. We affirm.
The plaintiff was an assistant professor in the School of Business of Troy State University at the Dothan/Ft. Rucker campus between 1980 and 1985 (beginning with the fall quarter of 1980 and running through the spring quarter of 1985). The plaintiff alleged in his complaint that between 1980 and 1985 the university's policies were not followed with regard to the scheduling of overloads and summer session pay. The complaint, in pertinent part, reads as follows:
 "3. Respondent Troy State University has duly adopted a binding policy relative to the hours of classroom teaching required or teaching schedule for both regular and summer sessions. Said policy provides that a normal teaching load shall consist of fifteen (15) hours of undergraduate classes or ten (10) hours of graduate classes. The policy further provides that in the event a faculty member's teaching schedule must be increased because of an emergency or unusual condition, the increase will be a temporary one and the faculty member will be compensated by a proportionately-reduced schedule in a subsequent quarter.
 "4. The respondent, Troy State University, has also duly adopted a binding policy relative to compensation to be paid for summer session teaching providing for full pay or salary to faculty who teach the equivalent of twelve quarter hours during the summer.
 "5. Respondents have not followed the policies outlined in paragraph three (3) and four (4) above in regard to regular quarter teaching overloads or in regard to full summer session pay for the petitioner. . . .
". . .
 "8. Unless the respondents are enjoined from refusing to follow their own binding policy, they will continue to deny the petitioner . . . the benefit of said policy. *Page 48 
 "9. Petitioner alleges that the policies of Troy State University relative to teaching loads and/or summer pay constitute a binding contract that respondents are ignoring and refusing petitioner . . . and that such action has damaged petitioner. . . .
 "WHEREFORE, the petitioner requests . . . the following relief:
 "A.) That this Honorable Court take jurisdiction of this matter and declare the rights of the parties.
". . .
 "C.) That the respondents be enjoined from refusing to abide by the duly adopted policies of Troy State University relative to teaching overloads and summer pay for summer quarter teaching.
 "D.) That compensatory damages be awarded to petitioner . . . based upon overloads found to have been taught over the past five (5) academic years and based upon summer teaching found to have been compensated for at less than what the duly adopted policy of Troy State University required.
 "E.) That the Court declare that the policies of Troy State University are binding on Troy State University and its trustees and administrative staff and that such policies must be followed and abided by."
The policies referred to in the plaintiff's complaint are set out in two "Faculty Handbooks" — the 1976 Faculty Handbook for the Troy State University System and the 1983 Faculty Handbook for Troy State University at Dothan/Ft. Rucker. The 1976 handbook provided that a normal teaching load during the academic year was 15 quarter hours per quarter for undergraduate classes and 10 quarter hours per quarter for graduate classes. A combination of undergraduate/graduate classes totaling 15 quarter hours constitutes an overload. The 1976 handbook also provided that if any faculty member's teaching schedule had to be increased in any quarter, he or she would be compensated by receiving a "proportionately-reduced schedule in a subsequent quarter." It also stated that during the summer session a faculty member had to teach at least 12 quarter hours in order to receive full salary and that if less than 12 quarter hours were taught, the faculty member was to be compensated on a prorated basis.[2]
These policies were changed slightly in the 1983 handbook, which became effective in the fall quarter of 1983. The teaching load for undergraduate classes became 44 to 46 quarter hours per academic year, the load for graduate classes became 34 to 36 quarter hours per academic year, and when a combination of undergraduate and graduate classes were taught, the load was 39 to *Page 49 
41 quarter hours per academic year. In the 1983 handbook there is no requirement for a proportionately reduced schedule in a subsequent quarter. Instead, it provides that overloads can be taught only during alternate quarters. The summer session policy did not change.[3]
Beginning in the fall quarter, 1980, the plaintiff taught the following schedule:
*Fall 1980 Winter 1981 Spring 1981 Summer 1981 --------- ----------- ----------- ----------- 2G 2G 1G/2U 1G/1U
(Normal load) (Normal load) (Overload) (Reduced load)
Fall 1981 Winter 1982 Spring 1982 Summer 1982 — ------- ----------- ----------- ----------- 2G 2G 2G/1U 1G/1U
(Normal load) (Normal load) (Overload) (Reduced load)
Fall 1982 Winter 1983 Spring 1983 Summer 1983 — ------- ----------- ----------- ----------- 1G/2U 2G 1G/1U 2U
(Overload) (Normal load) (Reduced load) (Reduced load)
Fall 1983 Winter 1984 Spring 1984 Summer 1984 — ------- ----------- ----------- ----------- 1G/2U 1G/1U 2G/1U 1G/1U
(Overload) (Reduced load) (Overload) (Reduced load)
Fall 1984 Winter 1985 Spring 1985 — ------- ----------- ----------- 3U 1G/2U 1G/1U
(Normal load) (Overload) (Reduced load)
* Note: G = Graduate course (5 hours each).
U = Undergraduate course (5 hours each).
The individual defendants implemented a policy that faculty members who taught a combination of undergraduate and graduate classes totaling 15 quarter hours in any quarter must be scheduled to teach a total of only ten quarter hours the next "teaching session" in which a combination ofundergraduate and graduate classes were taught, be it a"summer session" or a quarter in the "academic year."
See notes 1 and 2. This policy was explained to the members of the faculty in a 1978 memorandum *Page 50 
from Dr. J. Wyatt Grimmer, Dean of Academic Affairs, and in a 1982 memorandum from Dr. Eugene Calvasina, Dean of the School of Business. Each of the plaintiff's "overload" quartersduring the period in question was the result of his teachinga combination of undergraduate and graduate classes. If the policy implemented by the individual defendants is the policy of the university, then the plaintiff is not entitled to injunctive relief, because, as shown above, that policy was followed with respect to the plaintiff.
The plaintiff contends that during the period in question he was "overloaded" six quarters — Spring 1981, Spring 1982, Fall 1982, Fall 1983, Spring 1984, and Winter 1985 — but received only three "reduced" quarter schedules during that time — Spring 1983, Winter 1984, and Spring 1985. As we understand his argument, the plaintiff claims that it was contrary to the university's policy to count the summer sessions of 1981, 1982, and 1984 as "proportionately-reduced schedules." Thus, the plaintiff's position apparently is that it was the university's policy to compensate faculty members who had been overloaded in a particular quarter by giving them a proportionately-reduced schedule in a subsequent quarter of an academicyear.
Initially we should note that a motion to dismiss is proper when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Jeannie's Grocery v. Baldwin County Elec. Mem.Corp., 331 So.2d 665 (Ala. 1976). Here, because Troy State University is constitutionally immune from suit, its motion to dismiss was properly granted. Taylor v. TroyState University, 437 So.2d 472 (Ala. 1983).
A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P. All reasonable doubts concerning the existence of a genuine issue of fact must be resolved against the moving party.Fountain v. Phillips, 404 So.2d 614 (Ala. 1981).
The individual defendants argue that as employees of the university they are agents of the State of Alabama and, therefore, that they too are constitutionally immune from suit. In Taylor v. Troy State University, supra, the Court noted:
 "Our cases adhere to the view that the State has an interest such as will prohibit suit against the State official or employee where the action is, in effect, against the State. DeStafney v. University of Alabama, 413 So.2d 391 (Ala. 1982). However, this Court has held that certain categories of actions do not come within the prohibition of § 14:
(1) actions brought to compel State officials to perform their legal duties; (2) actions brought to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial acts; and (4) actions brought under the Declaratory Judgment Act seeking construction of a statute and its application in a given situation. Gunter v. Beasley, 414 So.2d 41 (Ala. 1982); Aland v. Graham, 287 Ala. 226, 250 So.2d 677 (1971). Other non-prohibited actions are inverse condemnation actions brought against State officials in their representative capacity and actions brought against State officials in their representative capacity and individually where it is alleged that they have acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law. Gunter v. Beasley, supra; Ex parte Carter, 395 So.2d 65 (Ala. 1980)." (Emphasis added.)
437 So.2d at 474.
Based on the foregoing, if the individual defendants have not acted toward the plaintiff in accordance with the rules and regulations set by the university, their acts are arbitrary and an action seeking to compel them to perform their legal duties will not be barred by the sovereign immunity clause of the Alabama Constitution of 1901; however, the action for compensatory damages cannot be maintained. The reason was stated in Gunter v. Beasley, 414 So.2d 41
(Ala. 1982): *Page 51 
 "Section 14 prohibits the State from being made a defendant in any court of this state and neither the State nor any individual can consent to a suit against the State. Aland v. Graham, 287 Ala. 226, 250 So.2d 677 (1971). The application of Section 14 to suits against officers of the State was treated in Ex parte Carter, 395 So.2d 65 (Ala. 1980), as follows:
 " '. . . In determining whether an action against a state officer is barred by § 14, the Court considers the nature of the suit or the relief demanded, not the character of the office of the person against whom the suit is brought. Wallace v. Board of Education of Montgomery County, 280 Ala. 635, 197 So.2d 428 (1967). This Court has held that § 14 prohibits suit against State officers and agents in their official capacity or individually when a result favorable to the plaintiff would directly affect a contract or property right of the State. Southall v. Stricos Corp., 275 Ala. 156, 153 So.2d 234
(1963).' " (Emphasis added.)
414 So.2d at 48.
The individual defendants also argue that there is no genuine issue concerning their implementation of the university's overload or summer session pay policies and, therefore, that they are entitled to a judgment as a matter of law. We agree.
In their affidavits, which were submitted in support of the motion for summary judgment, Dr. Adams, Dr. Grimmer, and Robert Paul stated that at all times the policies established by the university had been followed. In addition, both the 1976 and 1983 Faculty Handbooks clearly show that the procedure implemented by the individual defendants were not in conflict with the policies established by the university. Both handbooks stated that a school year is comprised of two "Teaching Sessions." (See notes 1 and 2.) One teaching session is referred to as the "Academic Year" and is 10 months in duration. The other teaching session is referred to as the "Summer Session" and is two months in duration. In both teaching sessions the schedules are computed on a "quarter hour" basis. There is nothing in the record tending to show that a quarter hour of credit earned by a student in a summer session does not count the same toward graduation requirements as a quarter hour of credit earned during a quarter in the academic year. Moreover, it is stated in the 1978 handbook that "Because summer enrollment is usually much lower than the enrollment of other quarters, it is not possible to guarantee summer employment to faculty members." (See note 1.) The plaintiff introduced no evidence in opposition to the motion for summary judgment tending to show that it was contrary to the university's policy to count summer sessions as "proportionately-reduced schedules."
Furthermore, it is undisputed that the plaintiff received full pay during the 1981, 1982, and 1984 summer sessions.
For the foregoing reasons the dismissal of Troy State University and the summary judgment for the individual defendants are affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, BEATTY and STEAGALL JJ., concur.
[1] There is no evidence in the record tending to show that the individual defendants acted in anything other than their official capacities in their dealings with the plaintiff.
[2] The pertinent portions of the 1976 handbook read as follows:
"TEACHING SESSIONS
"1. FULL-TIME
 "a. ACADEMIC YEAR. It is the policy of the University System to employ the faculty on a ten-month basis for the academic year. Faculty members may elect to distribute their salary for the academic year over a period of twelve months. Normally, the teaching schedule for undergraduate classes is fifteen quarter hours or the equivalent. For graduate classes, the normal schedule is ten quarter hours or the equivalent. A faculty member's teaching schedule may be reduced for special assignments or for duties not usually associated with classroom teaching. In the event a faculty member's teaching schedule must be increased because of an emergency or unusual condition, the increase will be a temporary one and the faculty member will be compensated by a proportionately-reduced schedule in a subsequent quarter.
 "b. SUMMER SESSION. The summer session normally consists of eight weeks. Summer employment is offered to a limited number of faculty members who are paid two additional months' salary at the same monthly rate they are paid during the academic year, provided they teach the equivalent of twelve quarter hours during the summer. Faculty members who teach fewer than twelve quarter hours or the equivalent during the summer are compensated on a pro-rated basis.
 "Because summer enrollment is usually much lower than the enrollment of other quarters, it is not possible to guarantee summer employment to faculty members. The selection of the summer faculty is largely determined by the qualifications requisite for the courses being offered. A faculty member who desires summer employment should inform his Department Chairman of that desire in writing not later than March 1 of an academic year."
[3] The pertinent portions of the 1983 handbook read as follows:
"TEACHING SESSIONS
 "ACADEMIC YEAR: It is the policy of TSU D/FR to employ the faculty on a ten-month basis for the academic year. Normally, the teaching load requirement is as follows:
 Undergraduate: 44 to 46 quarter hours per academic year
 Graduate: 34 to 36 quarter hours per academic year
 Combination: 39 to 41 quarter hours per academic year
(Graduate and Undergraduate)
 "1. When the graduate student enrollment of a combination graduate/undergraduate course is ten or more, the course will be considered a graduate course for computation in teaching loads or payment for overload teaching.
 "2. All TSU D/FR full-time faculty and staff may teach only one course per quarter as an overload and may teach an overload only during alternate quarters. Exceptions to this policy may be made in emergency situations with the approval of the appropriate Academic Dean and the Dean of Academic Affairs.
 "B. SUMMER SESSION: The summer session normally consists of eight to nine weeks. While it is not possible to guarantee summer employment, it will be offered to a limited number of faculty members who are paid at the same monthly rate they are paid during the academic year provided they teach from 12 to 15 quarter hours. If the faculty member teaches fewer than 12 quarter hours, his salary will be prorated according to the number of hours taught. The teaching load requirement for summer faculty shall be the same as the teaching load during the regular academic year. Summer contracts will be offered to full-time faculty members strictly on the basis of TSU D/FR needs. Faculty members should notify the appropriate Academic Dean in writing not later than March 1 concerning their availability status." *Page 52 
[EDITORS' NOTE: CONTAINED DECISIONS WITHOUT PUBLISHED OPINIONS.] *Page 53 
[EDITORS' NOTE: CONTAINED DECISIONS WITHOUT PUBLISHED OPINIONS.] *Page 54 
[EDITORS' NOTE: CONTAINED DECISIONS WITHOUT PUBLISHED OPINIONS.] *Page 55 
[EDITORS' NOTE: CONTAINED DECISIONS WITHOUT PUBLISHED OPINIONS.] *Page 56 
[EDITORS' NOTE: CONTAINED DECISIONS WITHOUT PUBLISHED OPINIONS.] *Page 57 
[EDITORS' NOTE: CONTAINED DECISIONS WITHOUT PUBLISHED OPINIONS.] *Page 58 
[EDITORS' NOTE: CONTAINED DECISIONS WITHOUT PUBLISHED OPINIONS.] *Page 59 
[EDITORS' NOTE: CONTAINED DECISIONS WITHOUT PUBLISHED OPINIONS.] *Page 60 
[EDITORS' NOTE: CONTAINED DECISIONS WITHOUT PUBLISHED OPINIONS.] *Page 786