The defendants, Gwendolyn H. Williams, in her capacity as commissioner of the Alabama Medicaid Agency, and the State of Alabama, appeal from a partial summary judgment in favor of the plaintiffs. The plaintiffs are a class of ambulance companies and other providers of medical services to two statutorily defined groups of persons covered under the Medicare Act,42 U.S.C. § 1395, and the Medicaid Act, 42 U.S.C. § 1396. We affirm in part, reverse in part, and remand.
The named plaintiffs in this action also filed an action in the United States District Court for the Middle District of Alabama, Northern Division, challenging the legality of the rate of reimbursement established by the commissioner for certain medical services provided to the two groups referred to above (known as "qualified Medicare beneficiaries" *Page 1231 
(or "QMBs") and "dual eligibles"), and seeking declaratory and injunctive relief. Approximately two months later, the plaintiffs filed the present class action in a state court. The state action challenged the legality of the commissioner's reimbursement plan on the same grounds alleged in the federal action and, in addition, it sought to require the commissioner to authorize retroactive payment to the plaintiffs for previous services they had provided to "QMBs" and "dual eligibles." The plaintiffs also sought to stay proceedings in the state action until the federal action had been concluded. The federal district court ruled in favor of the defendants; however, the Eleventh Circuit Court of Appeals reversed the district court's judgment, holding that the commissioner's reimbursement plan was not in accordance with federal law. For an explanation of what "QMBs" and "dual eligibles" are, and to better understand the facts and issues surrounding this dispute, see HaynesAmbulance Service, Inc. v. Alabama, 36 F.3d 1074 (11th Cir. 1994), and Pennsylvania Medical Society v. Snider,29 F.3d 886 (3d Cir. 1994), which was relied on by the Haynes court. Relying on the Eleventh Circuit's decision, the plaintiffs moved in the state court for a partial summary judgment as to liability. The trial court granted their motion, stating:
 "This cause came to be heard upon the Plaintiffs' Class Motion for Summary Judgment as to Liability. The Defendant Gwendolyn Williams, as Commissioner of the Alabama Medicaid Agency, filed an Objection to Plaintiffs' Motion for Summary Judgment. Therefore, the court heard oral argument on November 6, 1995.
 "Upon consideration of the motion, argument of counsel, the briefs filed, and the opinion of the Eleventh Circuit Court of Appeals in Haynes Ambulance Service, et al. v. State of Alabama, et al., 36 F.3d 1074 (11th Cir. 1994), the Court is of the opinion that the Plaintiffs' motion is due to be granted.
 "It is further ORDERED, ADJUDGED and DECREED that since January 1, 1989, the State Medicaid Plan has limited payment of Medicare Part B Cost-Sharing to the Medicaid rate in violation of federal law. Defendants are enjoined henceforth from limiting payment of claims by members of the certified class to the Medicaid rate, and the Court directs the Defendants to apply the Medicare rate in determining reimbursement for Part B Cost-Sharing.
 "The Court further finds that Defendants are liable for all claims submitted by the members of the certified class for services rendered since January 1, 1989, for Part B Cost-Sharing reimbursement the class members would have received but for the application of the unlawful Medicaid rate cap, subject to the Court's later review of whether these claims otherwise comply with applicable laws and the Medicaid Administrative Code, including limitations periods for submitting claims or appeals from claims, and what amount of reimbursement is due.
 "The Court has determined that there are no genuine issues of material fact as to the Commissioner's liability and there being no just reason for delay, a Final Judgment pursuant to Rule 54(b) of the Alabama Rules of Civil Procedure
is hereby GRANTED as to the liability of the Defendants as to the claims set out in Plaintiffs' Complaint, and the Clerk is directed to enter such judgment."
After a thorough consideration of the record, the briefs, the parties' oral arguments, and the Eleventh Circuit's decision inHaynes, we find no basis upon which to reverse the trial court's judgment insofar as that judgment is based on the Eleventh Circuit's interpretation of federal law. Therefore, we affirm the following portion of the trial court's order:
 "It is further ORDERED, ADJUDGED and DECREED that since January 1, 1989, the State Medicaid Plan has limited payment of Medicare Part B Cost-Sharing to the Medicaid rate in violation of federal law. Defendants are enjoined henceforth from limiting payment of claims by members of the certified class to the Medicaid rate, and the Court directs the Defendants to apply the Medicare rate in determining reimbursement for Part B Cost-Sharing."
However, we find persuasive the defendants' contention that the trial court *Page 1232 
lacked subject matter jurisdiction to order the commissioner to retroactively reimburse the plaintiff class for services rendered by that class since January 1, 1989.
In Gunter v. Beasley, 414 So.2d 41, 48 (Ala. 1982), this Court stated the general Alabama rule with respect to sovereign immunity:
 "Section 14 prohibits the State from being made a defendant in any court of this state and neither the State nor any individual can consent to a suit against the State. Aland v. Graham, 287 Ala. 226, 250 So.2d 677 (1971). The application of Section 14 to suits against officers of the State was treated in Ex parte Carter, 395 So.2d 65 (Ala. 1980), as follows:
 " '. . . In determining whether an action against a state officer is barred by § 14, the Court considers the nature of the suit or the relief demanded, not the character of the office of the person against whom the suit is brought. Wallace v. Board of Education of Montgomery County, 280 Ala. 635, 197 So.2d 428 (1967). This Court has held that § 14 prohibits suit against State officers and agents in their official capacity or individually when a result favorable to the plaintiff would directly affect a contract or property right of the State. Southall v. Stricos Corp., 275 Ala. 156, 153 So.2d 234
(1963).
 " 'There are four general categories of actions which in Aland v. Graham, 287 Ala. 226, 250 So.2d 677 (1971), we stated do not come within the prohibition of § 14: (1) actions brought to compel State officials to perform their legal duties; (2) actions brought to enjoin State officials from enforcing an unconstitutional law; (3) actions to compel State officials to perform ministerial acts; and (4) actions brought under the Declaratory Judgments Act, Tit. 7, § 156, et seq., [Ala. Code of 1940,] seeking construction of a statute and its application in a given situation. 287 Ala. at 229-230, 250 So.2d 677. Other actions which are not prohibited by § 14 are: (5) valid inverse condemnation actions brought against State officials in their representative capacity; and (6) actions for injunction or damages brought against State officials in their representative capacity and individually where it was alleged that they had acted fraudulently, in bad faith, beyond their authority or in a mistaken interpretation of law. Wallace v. Board of Education of Montgomery County, supra, 280 Ala. at 639, 197 So.2d 428; Unzicker v. State, 346 So.2d 931, 933 (Ala. 1977); Engelhardt v. Jenkins, 273 Ala. 352, 141 So.2d 193 (1962).' "
(Emphasis in original.)
The summary judgment in the present case would no doubt require the state to pay millions of dollars to qualified members of the plaintiff class in the form of reimbursement for services rendered since January 1, 1989. Therefore, applying well-established principles of state sovereign immunity, we conclude that the judgment would "directly [affect] a . . . property right of the State." Consequently, unless this action can be fairly placed in one of those categories this Court has recognized as not coming within the prohibition of § 14, then that portion of the judgment requiring the retroactive reimbursement to the plaintiffs is unconstitutional and must be set aside.
Relying primarily on State of Alabama Highway Department v.Milton Construction Co., 586 So.2d 872 (Ala. 1991); Gunter v.Beasley, supra; Curry v. Woodstock Slag Corp., 242 Ala. 379,6 So.2d 479 (1942); and Horn v. Dunn Brothers, Inc., 262 Ala. 404,79 So.2d 11 (1955), the plaintiff class "seeks for the Alabama Department of Medicaid to perform a clear ministerial or legal duty in reimbursing [the class] with monies that are due and owing for services rendered to the State which the State failed to pay under a mistaken interpretation of the law." In Milton, supra, this Court, holding that the State Highway Department was under a legal duty to pay for road construction work that the department had duly contracted for, stated:
 "Ala. Code 1975, § 23-1-40, states that it is the Highway Department's duty to maintain the roads of this state, and § 23-1-53 authorizes the Highway Department to make contracts for the construction or maintenance of highways, roads, or bridges *Page 1233 
in the state. Section 23-1-62(b) provides that the Highway Department [is to] use a portion of the funds appropriated to it for the expense of maintaining the roads. Pursuant to these statutes, the Highway Department contracted with Milton Construction to work on Interstate Highway 65 and Interstate Highway 59. See Milton I, 568 So.2d at 785-86. Once the Highway Department has legally contracted under state law for goods or services and accepts such goods or services, the Highway Department also becomes legally obligated to pay for the goods or services accepted in accordance with the terms of the contract. It follows that this obligation is not subject to the doctrine of sovereign immunity and is enforceable in the courts. See, e.g., Gunter v. Beasley, 414 So.2d 41
(Ala. 1982); State Board of Administration v. Roquemore, 218 Ala. 120, 117 So. 757 (1928).
 "It is undisputed that Milton Construction has already rendered the services called for under the contract. Consequently, we hold that this lawsuit is not barred by the doctrine of sovereign immunity, because it is in the nature of an action to compel state officers to perform their legal duties and pay Milton Construction for services contracted for and rendered. Gunter, supra; Roquemore, supra.
 "For example, in Roquemore the Highway Department contracted with Roquemore to purchase hay. After Roquemore had delivered a substantial amount of hay to the Highway Department, it refused to accept any further deliveries of hay and refused to pay for the hay that it had already received. Roquemore petitioned this Court for a writ of mandamus ordering the State Board of Administration and the Highway Department to pay him for the hay that he had delivered. This Court held that the writ was proper and was not barred by the doctrine of sovereign immunity because, under the applicable statutes, the Highway Department could not refuse to pay for goods that it had already accepted. This Court held that the suit in Roquemore was one to force a state agency to perform its legal duty, i.e., to force the Highway Department to pay for the hay that it had already accepted. Likewise, in this case, Milton Construction's action against the Highway Department is not barred by the doctrine of sovereign immunity."
586 So.2d at 875.
In Gunter, supra, a former lieutenant governor sued the state treasurer, the state comptroller, and the state finance director, seeking retroactive reimbursement for expenses he had incurred during his two previous terms in office. The evidence indicated that the Legislature, by resolution, had duly authorized reimbursement for the lieutenant governor's expenses; that the Senate Ethics Committee had set the expense allowance at a fixed sum of $1,500 per month; and that the state comptroller had initially authorized several payments in that amount, but had ceased payment after receiving an advisory opinion from the attorney general ruling that the reimbursements were unconstitutional. The trial court determined that the expense allowance had been wrongfully withheld from the former lieutenant governor and entered a judgment against the defendants in the amount of $124,350. After rejecting the constitutional issues raised by the defendants, this Court affirmed, stating:
 "We are of the opinion that this action is in the nature of both an action to compel State officers to perform their legal duties and an action to enjoin State officers who have acted under a mistaken interpretation of the law.
 "As previously noted, defendants, in the exercise of their respective functions, caused cessation of payment to Beasley after receiving an advisory opinion from the Attorney General that the resolutions authorizing the expense allowance for the Lieutenant Governor were unconstitutional. That advisory opinion was based upon Section 67 of the Constitution and Code 1940, Title 32, Section 28 (the latter being the precursor provision of Code 1975, § 29-4-2), as well as upon Hall v. Blan, 227 Ala. 64, 148 So. 601 (1933). We have already determined that these constitutional and statutory provisions do not invalidate the provisions of H.J.R. 223 and S.R. 112 contested in this suit. Moreover, we *Page 1234 
note the holding of Hall v. Blan was expressly overruled in Van Hart v. deGraffenried, [388 So.2d 1196 (Ala. 1980)], on which authority today's opinion primarily rests.
 "We therefore conclude the Attorney General was acting under a mistaken interpretation of the law in advising nonpayment of expense monies authorized by H.J.R. 223 and S.R. 112. We further hold that defendants in refusing to make these payments to Beasley failed to perform their legal duties. It follows that this is not a suit barred by Article 1, Section 14, of the Alabama Constitution."
414 So.2d at 48-49.
In Curry, supra, a taxpayer sued the Alabama revenue commissioner, seeking a judgment declaring that a sales tax was not applicable. In affirming the trial court's order overruling the commissioner's demurrer to the complaint, this Court stated:
 "[This action] therefore seeks the construction of a statute as authorized by Title 7, sections 157 et seq., Code of 1940. No injunction is sought, nor other relief which affects the rights of the State. The only contention made on this appeal is that the suit is essentially against the State and in violation of section 14, Constitution of Alabama 1901, which prohibits the State from being a defendant in any court of law or equity.
". . . .
 "This immunity does not extend to officers when an effort is made to compel them to perform ministerial acts. State v. Clements, 217 Ala. 685, 117 So. 296 [(1928)]; State Board of Administration v. Roquemore, 218 Ala. 120, 117 So. 757 [(1928)]; State Docks Commission v. Barnes, [225 Ala. 403, 143 So. 581 (1932)].
 "Nor when officers under a mistaken interpretation of the law acting in the name of the State commit acts not within their authority which are injurious to the rights of others. Finnell v. Pitts, 222 Ala. 290, 132 So. 2 [(1930)]. It is said in 25 R.C.L. 415, that 'the acts of officials that are not legally authorized or that exceed or abuse the authority of discretion conferred upon them are not acts of the state.' It is not at all the necessary consequence of a suit to settle an actual controversy with such an officer before the deed is done that it be in essence one against the State. An officer is often confronted with the problem of what the law means which requires certain acts on his part and whether it is valid. Advice by the Attorney General does not protect him against the claims of individuals which result from an erroneous construction of law affecting his duties. Code of 1940, Title 55, §§ 240-241.
 "When such a controversy arises between him and an individual the Declaratory Judgments Act furnishes the remedy for or against him. When it is only sought to construe the law and direct the parties, whether individuals or State officers, what it requires of them under a given state of facts, to that extent it does not violate section 14, Constitution. This theory has been apparently recognized without question in all such cases. [Citations omitted.]
 "If appellant's contentions were sound, all such cases would be as a scrap of paper.
 "All the cases on which appellant relies have other elements in addition to a declaration of rights under the law, which were held to affect the interests of the State in a direct way: Such as those seeking an injunction of the collection of taxes, State Tax Commission v. Commercial Realty Co.,, 236 Ala. 358, 182 So. 31 [(1938)]; Barlowe v. Employers Ins. Co., 237 Ala. 665, 188 So. 896
[(1939)]; and a suit which seeks to enjoin a prosecution of an indictable offense, Montiel v. Holcombe, 240 Ala. 352, 199 So. 245 [(1940)].
 "This section of the Constitution prohibits a suit against the State by an indirection as by setting up a board and allowing it to be sued for the State's contract or other liabilities when the effect is to fasten a claim against the State's resources. Dunn Construction Co. v. State Board of Adjustment, 234 Ala. 372, 175 So. 383 [(1937)].
 "It also prohibits a personal action against the State Tax Commission to recover money paid as a license tax under protest. J. R. Raible Co. v. State Tax *Page 1235 Commission, 239 Ala. 41, 194 So. 560 [(1939)].
 "The question of whether the State is in substance a party to such a suit as the one now before the Court has never been heretofore presented, but the contrary has been assumed in a great many cases such as those we have cited.
 "Considering the true nature of a suit which is declaratory of controversial rights and seeks no other relief, but only prays for guidance both to complainant and the State officers trying to enforce the law so as to prevent them from making injurious mistakes through an honest interpretation of the law, and thereby control the individual conduct of the parties, albeit some of them may be acting for the State, it is our opinion that a suit between such parties for such relief alone does not violate section 14 of the Constitution."
242 Ala. at 380-81, 6 So.2d at 480-81.
In Horn v. Dunn Brothers, Inc., supra, a taxpayer sued the Alabama revenue commissioner, seeking a judgment declaring that it was entitled to a refund of taxes under Title 51, § 913, Ala. Code of 1940. The taxpayer had previously received a favorable ruling by the trial court on its complaint challenging its liability for the taxes, and that ruling had not been appealed. The trial court found in favor of the taxpayer and ordered the commissioner to refund $5,731.92 to the taxpayer. This Court affirmed, stating:
 "The State Department of Revenue now contends that the proceedings below and the decree from which they prosecute this appeal are void as violative of Section 14 of the Constitution of Alabama 1901, which provision prohibits making the State of Alabama a defendant in any court of law or equity. This question was not raised in the nisi prius court, and the taxpayer insists that it may not now be raised for the first time. With this insistence, we cannot agree. If the appellant's contention were valid, neither the court below nor this court has the jurisdiction to render or countenance the decree of 15 May 1953. Among the questions for consideration on this appeal is the problem of jurisdiction of the trial court as a basis for jurisdiction of this Court. Our Court has consistently held that it will take notice of the question of jurisdiction at any time or even ex mero motu. Scott v. Alabama State Bridge Corporation, 233 Ala. 12, 169 So. 273 [(1936)].
 "While we may in no manner impinge upon the immunity of the State from suit, adherence to strict formalism would necessarily extend the inclusiveness of Section 14 of our Constitution beyond the policy consideration which occasioned its existence. In the interpretation and application of Section 14 of the Constitution, this Court has stated that it would seek a common sense approach to the problem of the State's immunity from suit. We have pointed out that it is the nature of the suit or the relief demanded which the courts consider in determining whether an action against a State officer is in fact a suit against the State in violation of the Constitutional prohibition. Glass v. Prudential Ins. Co., 246 Ala. 579, 22 So.2d 13 [(1945)].
 "When State officers are required to perform ministerial acts, they derive no comfort or immunity from Section 14, supra. Curry v. Woodstock Slag Corporation, 242 Ala. 379, 6 So.2d 479
[(1942)]; State v. Clements, 217 Ala. 685, 117 So. 296 [(1928)].
 "In State Board of Administration v. Roquemore, 218 Ala. 120, [123], 117 So. 757, 759 [(1928)], the petition sought a writ of mandamus to compel the respondent to audit and voucher for payment petitioner's account for hay sold to the State Highway Department. After noting that by statute the State Highway Department was required to pay for material furnished out of the Highway fund, this Court said:
 " 'This proceeding for mandamus is in no sense a suit against the state. The petition shows an executed contract of purchase and sale, for a definite price, and therefore a clear legal duty on the part of the highway department, through its executive head, presumptively, to audit and approve petitioner's claim, in order that it may be paid out of the appropriate fund on warrant drawn *Page 1236 
by the state auditor in accordance with the usual practice.
 " 'It is of course true that discretionary action or choice of action on the part of public officials cannot ordinarily be coerced by mandamus. Citizens' Bank, etc. v. Commissioners' Court, 209 Ala. 646, 96 So. 778
[(1923)]; State ex rel. Docourneau v. Langan, 149 Ala. 647, 43 So. 187 [(1907)]; Ex parte Thompson, 52 Ala. 98, 100 [(1875)]. But, in cases like this, the board's discretion is exhausted when it gives an order for materials and accepts delivery
of them in due season; or, if there is receipt without express acceptance, when the materials are accepted by their actual use. Of course it always remains for the responsible officer to ascertain the existence of the facts upon which his obligation to perform the duty depends, but that is not the kind of judgment or discretion which would avert the writ of mandamus. Grider v. Talley, [Talley] 77 Ala. [422], 425, 54 Am.Rep. 65 [(1884)]; State ex rel. Turner v. Bradley, 134 Ala. 549, 552, 33 So. 339 [(1902)]; Stewart v. Wilson Printing Co., 210 Ala. 624, 627, 99 So. 92 [(1924)]. . . .'
 "The critical question here presented is whether or not after a taxpayer has received a declaration of right, he is entitled to a refund of certain taxes, and whether after refusal of such refund by the State Department of Revenue upon the petition of the taxpayer, a court of equity is empowered to order the State Department of Revenue to take affirmative action on the taxpayer's refund. The Commissioner contends not, saying, in effect, that under Tit. 51, § 913, as amended, supra, his disposition of the taxpayer's petition is discretionary; that regardless of the merits of the taxpayer's claim, if the Commissioner chooses not to certify that the taxpayer is entitled to a refund, this decision is final. And, that any suit seeking to compel such certification is an action against the State forbidden by Section 14 of the Constitution. Possibly the soundness of the Commissioner's contention would depend upon the absence of any clear, legal duty under the circumstances.
 "The Code of Alabama 1940, Tit. 51, § 913, as amended, authorizes the refund of taxes paid directly to the State Department of Revenue upon petition of the taxpayer within three years of such payment where, by mistake of fact or law, an amount was paid in excess of the amount due. This section further provides:
 " 'The department of revenue shall examine said petition and the records of the department of revenue, and if the facts set forth in the petition are such as to entitle the petitioner to the refunding of the money as prayed for and the department of revenue, upon the evidence adduced is satisfied that the petitioner is entitled to the refund as prayed for, he shall so certify to the comptroller. . . .'
 "The taxpayer made application for refund and the Commissioner refused the application. This application was made in conformity with, and based upon, the declaration of right which he received in the equity court, and from which declaration the Commissioner chose not to prosecute an appeal.
 "It is manifestly fitting and proper that in order to maintain orderly government, each taxpayer is required to furnish his fair share of the State's revenue — its life blood. Of no man is one drop in excess of his share required. The citizen is required to render unto Caesar those things which are Caesar's — but not to make further obeisance.
 "It is harsh and unjust for the State to withhold overpayments made through mistake by the over-conscientious taxpayer. When the Legislature of Alabama enacted Section 913, supra, they thereby created the machinery for the satisfaction of the State's moral duty to refund taxes erroneously paid. It is inconceivable that the Legislature could have intended that the basic purpose for which they enacted the statute could or should be thwarted by arbitrary actions of the State Department of Revenue. Nor do we believe that the framers of the Constitution intended to attempt to control the internal workings of the State tax collecting machinery when *Page 1237 
Section 14, supra, was written into the basic organic law. The historical reasons for the need of governmental immunity from suit are too well known to here require review.
 "We do not find it here necessary to decide the limits of the discretionary power given to the State Department of Revenue under Section 913, supra. The decree of 29 February 1952, established the taxpayer's right to a refund for taxes paid on interstate operations. All that remained to be done by the State Department of Revenue was the computation of such refund and the necessary certification to the comptroller. At least, to that extent, the duties of the Commissioner were ministerial only.
 "What, then, was the nature of the relief demanded? The supplemental decree of 15 May 1953, only required the Commissioner to perform an established duty.
 "No judgment against the State was sought or granted. True, the decree may ultimately touch the State treasury. Yet, the State treasury suffers no more than it would, had the Commissioner initially performed his clear bounden duty. The State of Alabama, as well as the taxpayer, has an interest in the proper performance of official duties by its Department Heads. We, therefore, conclude that the present suit is essentially personal in nature and consequently does not fall within the purview of the prohibition set out in Section 14, of the Constitution of 1901."
262 Ala. at 408-10, 79 So.2d at 15-17. (Emphasis inRoquemore original.)
To summarize, Milton involved a clear contractual obligation on the part of the State highway director to pay a sum certain for road construction, and that obligation was held to be enforceable; Gunter involved a constitutional decision by the Legislature (the governmental body specifically charged with the constitutional authority to spend the State's money, see Ala. Const. 1901, § 72; Opinion of the Justices, No. 66,244 Ala. 632, 15 So.2d 41 (1943)), to reimburse a state official for expenses incurred during his term of office; Curry did not involve the payment of any funds from the State treasury; andHorn involved the ministerial act of refunding tax money pursuant to a statutory refund procedure established by the Legislature — money that the State was clearly not entitled to and that had not been legally earmarked for public expenditure. As was noted in Horn, this Court has tried to take a case-by-case commonsense approach to interpreting § 14 and applying the State's sovereign immunity. "We have pointed out that it is the nature of the suit or the relief demanded which the courts consider in determining whether an action against a State officer is in fact a suit against the State in violation of the Constitutional prohibition." 262 Ala. at 408,79 So.2d at 15. The common thread running through the cases discussed above is the unfairness that would have occurred from allowing the State to arbitrarily avoid its financial obligations. There was, and is, no legitimate reason to allow State department heads to avoid their clear contractual or ministerial obligations (once those obligations are determined), even if the performance of those obligations ultimately touches the State treasury. Such avoidance of legal and moral responsibility by the State was not the intent of the framers of the Constitution. Likewise, there was, and is, no legitimate reason (or constitutional authority) for this Court to interfere in the legislative appropriation process, as long as that process passes constitutional muster.
However, the present case is different, we think, from those cases just discussed. Although we appreciate, and regret, the fact that the plaintiff class, as a whole, was denied full payment for certain services rendered since 1989, based on what has now been judicially determined by the Eleventh Circuit Court of Appeals to be a mistaken interpretation of the Medicare and Medicaid Acts by the commissioner, we nonetheless believe that the circumstances surrounding the commissioner's actions militate against any further relaxation of the prohibitive effect of § 14 in this case. It is not seriously disputed that the Medicare and Medicaid Acts are torturous reading and not easily decipherable, even by those trained in the law. The Fourth Circuit Court of Appeals in RehabilitationAss'n of Virginia, Inc. v. Kozlowski, *Page 1238 42 F.3d 1444, 1450 (4th Cir. 1994), cert. denied, ___ U.S. ___,116 S.Ct. 60, 133 L.Ed.2d 23 (1995), characterized these Acts as follows:
 "There can be no doubt but that the statutes and provisions in question, involving the financing of Medicare and Medicaid, are among the most completely impenetrable texts within human experience. Indeed, one approaches them at the level of specificity herein demanded with dread, for not only are they dense reading of the most torturous kind, but Congress also revisits the area frequently, generously cutting and pruning in the process and making any solid grasp of the matters addressed merely a passing phase."
In addition, we find it significant that the commissioner's interpretation of the Medicare and Medicaid Acts was consistent with the interpretation placed on those acts by the Secretary of the Department of Health and Human Services, the agency of the United States Government specifically charged with overseeing and enforcing those Acts. For these reasons, we cannot easily pigeonhole this case into one of the clear contractual-obligation or ministerial-duty categories previously recognized by this Court as not coming under the prohibition of § 14. There was no apparent bad faith or other improper motivation underlying the commissioner's implementation of the Medicaid Agency's reimbursement plan, and although that plan has now been judicially determined to have been inconsistent with federal law, we are not persuaded that the pecuniary remedy sought by the plaintiff class (requiring disbursement from the State treasury), is constitutionally allowable under § 14.
Therefore, we reverse the following portion of the trial court's order:
 "The Court further finds that Defendants are liable for all claims submitted by the members of the certified class for services rendered since January 1, 1989, for Part B Cost-Sharing reimbursement the class members would have received but for the application of the unlawful Medicaid rate cap, subject to the Court's later review of whether these claims otherwise comply with applicable laws and the Medicaid Administrative Code, including limitations periods for submitting claims or appeals from claims, and what amount of reimbursement is due.
 "The Court has determined that there are no genuine issues of material fact as to the Commissioner's liability and there being no just reason for delay, a Final Judgment pursuant to Rule 54(b) of the Alabama Rules of Civil Procedure
is hereby GRANTED as to the liability of the Defendants as to the claims set out in Plaintiffs' Complaint, and the Clerk is directed to enter such judgment."
For the foregoing reasons, the judgment is affirmed in part and reversed in part and the cause is remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and MADDOX, SHORES, KENNEDY, BUTTS, and SEE, JJ., concur.